DOCKET NO: 07 cv 06534

==============================================================

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

==============================================================

IN RE:                                          )        Bankruptcy No. 07 B 6631
                                                )        The Hon. Bruce W. Black, B.J.
KEITH SMITH and DAWN SMITH, Debtors             )
-------------------------------------------------)
KEITH SMITH and DAWN SMITH,                     )
                    Plaintiffs-Appellants       )        Appeal from:
          v.                                    )        Adversary No.  07 A 00239
SIPI, LLC, and                                  )        to:
MIDWEST CAPITAL INVESTMENTS, LLC,               )        The Honorable Ronald A. Guzman,
                    Defendants-Appellees        )                District Judge

==============================================================

APPELLANTS' BRIEF

==============================================================

January 28, 2008

Arthur G. Jaros, Jr.
1200 Harger Road, #830
Oak Brook, IL 60523
(630) 574-0525

TABLE OF CONTENTS

STATEMENT OF THE BASIS OF APPELLATE JURISDICTION                    1

STATEMENT OF ISSUES ON APPEAL and of APPLICABLE
      STANDARD OF REVIEW                                              2

STATEMENT OF THE CASE                                              4

      A) Nature of the Case                                         4

      B) Course of Proceedings                                      4

      C) Disposition in the Bankruptcy Court Below                  4

      D) Statement of Relevant Facts                                5

ARGUMENT                                                          7

      Nature of Defendants' Motions                                 7

      The Position of Plaintiffs-Appellants                         8

      Underlying Policy                                             9

      Review of Illinois State Law                                 10

      The Court Below and the McKeever line of cases Err in their
          Understanding of Illinois Law                            13

      The Court Below and the McKeever line of cases Err in Reading
          11 U.S.C. Section 548                                    17

      The Red Herring: A Property Owner's Loss of Control Upon Expiration
          of the Redemption Period                                 22

      Conclusion to Argument                                       28

CONCLUSION (Prayer)                                               31

STATUTES CITED

11 U.S.C. Section 101(54) (Appendix K-1): pp.  8, 11, 12, 15-18, 17, 18, 21, 22, 25, 26, 28, 2911
11 U.S.C. Section 323: p. 9
11 U.S.C. Section 548 (Appendix K-2):   cited throughout Argument (pp. 7-30)
11 U.S.C. Section 550: p. 28
11 U.S.C. Section 1322: p. 28
35 ILCS 200/22-40(c): p. 12

TABLE OF CASES

Bates, 270 B.R. 455 (Bankr. N.D. Ill., 2001, Wedoff, B.J.)                          7
Belisle v. Plunkett, 877 F.2d 512 (7th Cir. 1989)                                  28
Bequette, 184 B.R. 327 (Bankr. S.D. Ill. 1995, Meyers, B.J.)                       7, 8,
                                                                                    13, 22
Butler, 171 B.R. 321 (Bankr N.D. Ill. 1994, Schmetterer, B.J.)                     7, 17
City of Chicago v. City Realty Exchange, 127 Ill.app.2d 185 (1st District 1970)    11, 13
                                                                                    14,
Einoder, 55 B.R. 319 (Bankr. N.D. Ill. 1985)                                       9
Join-In Int'l (U.S.A.) Ltd. V. New York Wholesale Distributors Corp.,
       56 B.R. 555 (Bankr. S.D.N.Y. 1986)                                          10
Kasco, 378 B.R. 207 (Bankr N.D. Ill. 2007, Hollis, B.J.)                           9
McKeever, 132 B.R. 996 (Bankr. N.D. Illinois, 1991, Katz, B. J.)                   7,8, 10
                                                                                    13-29
McKinney, 341 B.R. 892 (C.D. Ill 2006)                                             8,13,14
                                                                                    25, 29
Moureau, 147 B.R. 441 (Bankr. N.D. Illinois, 1992 Wedoff, B.J.)                    7, 12,
                                                                                    17
Murray, 276 B.R. 869 (Bankr. N.D. Ill., 2002, Squires, B.J.)                       7
Robinson, 80 B.R. 455 (Bankr. N.D. Ill. 1987)                                      9
S.I. Securities v. Dabal, 2003 WL 21785625 (N.D. Ill. 2003, Andersen, D.J.)        7
Smith v Phoenix Bond & Indemnity, 288 B.R. 793 (N.D. Ill. 2002, Moran, D.J.)       7
Wellman v. Wellman, 933 F.2d 215 (4th Cir)                                         10
Wells v. Glos, 277 Ill. 516, 115 N.E. 658                                          13, 14

OTHER AUTHORITIES

4 Collier on Bankruptcy, ¶550.02 (15th ed. 1979)                                   10
5 Collier on Bankruptcy, ¶550.02 (15th ed. Rev. 2004)                              10

## STATEMENT OF THE BASIS OF APPELLATE JURISDICTION

This Honorable United States District Court has jurisdiction over this Bankruptcy Appeal pursuant to 28 U.S.C. §158(a)(1).  An Order of Dismissal granting the Defendants' F.R. Civ.P. 12(b)(6) Motions to Dismiss Plaintiff-Appellants' Adversary Complaint was granted by order dated October 3, 2007.  This appeal was perfected by filing of the Notice of Appeal on October 8, 2007 within ten (10) days of the entry of the October 3, 2007 order as required by F.R.Bankr.P. 8001(a) and 8002(a).  In addition, Appellants' designation of the record and statement of issues on appeal were timely filed on October 18, 2007, within ten (10) days of the filing of the Notice of Appeal as required by F.R.Bankr.P. 8006.

STATEMENT OF ISSUES ON APPEAL
and of
APPLICABLE STANDARD OF REVIEW

ISSUES:

1) Did the Bankruptcy Court err in granting Defendants' Rule 12(b)(6) Motions to Dismiss

Counts III and IV of the Adversary Complaint?


2) Did the transfer  by tax deed of legal title to Plaintiffs' homestead property which occurred

within two years of the  filing of the Bankruptcy Petition and Adversary Complaint constitute a

transfer of an interest of the debtors or either of them in property prima facie eligible for

avoidance under 11 U.S.C. §548, taking the factual allegations of the Adversary Complaint as

true?


3) Did the transfer of equitable title to Plaintiffs' homestead property occur within two years of

the  filing of  the Bankruptcy Petition and Adversary Complaint herein and, if so, was such

transfer prima facie eligible for avoidance under 11 U.S.C. §548, taking the factual allegations of

the Adversary Complaint as true?


4) Did the transfer of the right of possession to Plaintiffs' homestead property occur within two

years of the filing of the Bankruptcy Petition and Adversary Complaint herein and, if so, was

such transfer avoidable under 11 U.S.C. §548?

5) Is a transfer of an interest in property, unperfected at the time when made, deemed *for purposes of computing the two year period under 11 U.S.C. §548(a)* to be made only (a) when such transfer is later perfected (to the degree set forth in 11 U.S.C. §548(d)(1)), or (b) if such transfer is never so perfected, then immediately before the date of the filing of a debtor's petition in bankruptcy?

6) At what point does the change in legal rights attendant to the expiration of the period of redemption pertaining to unpaid and sold Illinois real estate taxes constitute a transfer for purposes of §101(54), at what point in time is such transfer considered perfected under 11 U.S.C. §548(d)(1) and at what point in time is any such transfer deemed for purposes of 11 U.S.C. §548(a) to have been made?

STANDARD OF REVIEW:

There being no issues of fact and dismissal being based upon F.R.Civ.P. 12(b)(6), the standard of review is *de novo.* (See, F.R.Bankr.P. 8013; In re: JLI, Inc., 988 F.2d 1112 (11th Cir. 1993)).

STATEMENT OF THE CASE

A) Nature of the Case

This is an adversary proceeding in the bankruptcy court below brought pursuant to §548 of the United States Bankruptcy Code (Appendix K-2) to avoid a transfer of the fee simple ownership and homestead interests of the Debtors-Plaintiffs-Appellants Smith in inherited and unmortgaged Illinois residential real estate sold for real estate taxes and the subject of a tax deed in favor of Defendant SIPI, LLC and later resold to Defendant Midwest Capital Investments.

B) Course of Proceedings

Debtors-Plaintiffs-Appellants Smith instituted their Adversary Proceeding through the filing of their Adversary Complaint (Appendix A) on April 13, 2007, the same date as the commencement of their Chapter 13 Bankruptcy Proceeding.

Defendants-Appellees thereupon moved to dismiss the Complaint and Adversary Proceedings by separate motions (Appendices D-1 and D-2), each brought under F.R.Civ.P. 12(b)(6) and alleging tardy filing under the two year limit of Section 548.   Plaintiffs filed a combined Response (Appendix E) and each Defendant filed a Reply (Appendices F-1 and F-2).   In lieu of oral argument on the set date of August 17, 2007 (fixed by Order entered July 24, 2007: see Docket Entry #29, Appendix I), Plaintiffs Smith were granted leave to file a Surreply (Docket Entry # 39, Appendix I) and did so (Appendix G).

By Order entered August 22, 2007 (Docket Entry #38, Appendix I), the case was set for August 31, 2007 and the court entertained brief oral argument at that time (See Report of Proceedings reproduced as Appendix J) and further continued the case to September 28, 2007 (Docket Entry #42, Appendix I).

C) Disposition in the Bankruptcy Court Below

On September 28, 2007, the Court read its oral ruling into the Record (Appendix C) and on October 3, 2007, entered a written order (Appendix B) in conformity with the oral ruling,  granting

Defendants' Rule 12(b)(6) Motions and dismissing the Adversary Complaint and thereby also terminating the Adversary Proceedings in the bankruptcy court.

Debtors-Plaintiffs Smith filed their Notice of Appeal to this Honorable Court on October 8, 2007 (Appendix H).

D) Statement of the Facts Relevant to the Issues Presented for Review

At all relevant times, Keith and Dawn Smith occupied, as their homestead and  principal residence, real estate situated in Joliet, Will County, Illinois (Appendix A, Complaint ¶11).

Such property was inherited by Dawn Smith from an ancestor of hers and she held record title from and after March 24, 2004  (Appendix A, Complaint ¶12).

On November 2, 2001, real estate taxes for tax year 2000 were sold to the Defendant SIPI (Appendix A, Complaint ¶14; ¶2 of  Exhibit A to Appendix F-2).

On November 1, 2004, the period of redemption expired (¶5 and ¶6 of Exhibit A to Appendix F-2).

On April 15, 2005, the County Clerk of Will County, Illinois executed a Tax Deed in favor of SI-PI, LLC (Appendix A, Complaint ¶16) which the Bankruptcy Court found was intended to mean SIPI, LLC (Appendix C, pp. 7, 8).  The deed was recorded over a month later on May 19, 2005 (Appendix A, Complaint ¶16).

By Warranty Deed dated August 10, 2005 and recorded on August 17, 2005, a grantor designated on the face of such deed as S.I.-P.I., LLC conveyed the same real estate to Midwest Capital Investments, LLC. (Appendix A, Complaint ¶17)).  The Bankruptcy Court apparently likewise found the grantor of this conveyance to be intended to be SIPI, LLC (see Appendix C, pp. 7, 8).

The inconsistencies in the naming of "SIPI, LLC", "SI-PI, LLC" and "S.I.-P.I., LLC" between

the recognized lawful name (SIPI), the named grantee in the tax deed and the named grantor in the warranty deed were the subjects of Counts I and II of the Adversary Complaint from which appeal is not taken.

The tax deed is alleged by ¶21 of Count III of the Complaint (Appendix A) to have been for less than a reasonably equivalent value and further, according to ¶22, to have rendered Dawn Smith insolvent.

¶19 of Count III of the Complaint (Appendix A) expressly alleges that the tax deed transferred an interest in property of the Debtor Dawn Smith.   As noted above, Keith Smith was also alleged earlier in the Complaint to be an homestead occupant of such premises.

The tax deed was issued (April 15, 2005) and recorded (May 19, 2005) within two years of the commencement of the Adversary Complaint on April 13, 2007, but the period of redemption expired more than two years before such commencement; therein lies the dispute between the parties resolved by the Bankruptcy Court in favor of the defendants and for which review by this Honorable Court is now sought by the Debtors-Plaintiffs.

¶23 of Count IV of the Complaint (Appendix A) alleged that Midwest Capital Investments, as transferee from SIPI, LLC, had knowledge of the voidability of the transfer effectuated by the tax deed and/or that Midwest Capital Investments had not acted in good faith.

The prayers to Counts III and IV of the Complaint sought various relief in the alternative under §548 of the Bankruptcy Code, depending on the facts proven at trial (Appendix A, pp. 6-8).

ARGUMENT

Plaintiffs seek to recover ownership of their primary residence in the face of the pre-petition issuance and recording of a tax deed within two years of the commencement of their Chapter 13 bankruptcy proceeding and of the instant adversary proceeding.

<u>Nature of the Defendants' Motions</u>

11 U.S.C. Section 548(a)(1) provides that "the trustee may avoid ***any*** transfer ... of an interest of the debtor in property .... that was made ... on or within two years before the date of the filing of the petition if the debtor voluntarily or involuntarily  ... (B)(i) received less than reasonably equivalent value in exchange for such transfer ... and (ii)(I) ... became insolvent as a result of such transfer ..." (emphasis added)

The Adversary Complaint alleges in ¶¶13-16 that Defendant SIPI was the purchaser at the tax sale and ultimately the grantee in the tax deed issued April 15, 2005.  This civil action was commenced on April 13, 2007.

SIPI and its purported transferee by subsequent warranty deed, Midwest, each moved under F.R.Civ.P. 12(b)(6) to dismiss, alleging that this civil action was not commenced within the two year period specified by 11 U.S.C. §548 as referenced above.  Movants relied upon <u>McKeever</u>, 132 B.R. 996 (Bankr. N.D. Illinois, 1991, Katz, B. J.) and its progeny arising within this and other bankruptcy districts within the State of Illinois:

<u>Moureau</u>, 147 B.R. 441 (Bankr. N.D. Illinois, 1992 Wedoff, B.J.)

<u>Butler</u>, 171 B.R. 321 (Bankr N.D. Ill.. 1994, Schmetterer, B.J.)

See also:

<u>Bequette</u>, 184 B.R. 327 (Bankr. S.D. Ill. 1995, Meyers, B.J.)

<u>Bates</u>, 270 B.R. 455 (Bankr. N.D. Ill., 2001, Wedoff, B.J.)

<u>Murray</u>. 276 B.R. 869 (Bankr. N.D. Ill., 2002, Squires, B.J.)

<u>Smith v Phoenix Bond & Indemnity</u>, 288 B.R. 793 (N.D. Ill. 2002, Moran, D.J.)

<u>S.I. Securities v. Dabal</u>, 2003 WL 21785625 (N.D. Ill. 2003, Andersen, D.J.)

Of these cases, only three pertained to an avoidance action under Section 548 (<u>McKeever;</u> <u>Moureau</u> and <u>Butler</u> (with the latter two cases adopting <u>McKeever</u> without extensive review of

McKeever's reasoning) .  The Bankruptcy Court below quoted from Bequette and briefly referenced McKeever.  (Appendix C, pp. 9-11).  The remaining cases pertain to (a) the interplay of Section 108 and the ability of a Chapter 13 Plan to cure unpaid taxes beyond the Section 108 period and/or (b) the operation of the Automatic Stay (whether in Chapter 7 or Chapter 13) in the context of staying action by a tax sale purchaser to proceed with the state court process leading to issuance of a tax deed and the grantee's recording thereof.

However, a review of the case law reveals that Bequette's position adopted by the Bankruptcy Court below derived directly from McKeever (as the Defendant's own briefs to the bankruptcy court recognize (Appendix D-1, p. 2; D-2, p. 4; F-2, p.2) and that it is McKeever's analysis which warrants critical examination and correction as being at odds with the plain language of Section 548 (as well as Section 101( 54)) enacted by Congress into the Bankruptcy Code.  Thus, this Brief will shortly turn to a close analysis of Bankruptcy Judge Katz' 1991 opinion in McKeever.

<u>The Position of Plaintiffs-Appellants</u>

McKeever, with the few exceptions noted below, correctly analyzed the tax sale procedure provided by state law but sorely  misapprehended and misapplied the controlling text of the U.S. Bankruptcy Code.

Plaintiffs-Appellants here maintain (and maintained in the Bankruptcy Court below) that McKeever, although correctly decided in favor of its debtors,  contained erroneous dicta affecting statutory interpretation of the plain and controlling text of the U.S. Bankruptcy Code and impairing the public policy underlying 11 U.S.C. §548.

 The fundamental errors of law contained in McKeever and additional errors contained its progeny have recently been convincingly and exhaustively noted by Bankruptcy Judge Thomas Perkins' opinion in McKinney, 341 B.R. 892 (C.D. Illinois 2006), although McKinney did not

involve the precise issue presented in this case.   Subsequent to the ruling below, <u>McKinney</u> has

received favorable comment as correcting prior erroneous case law from the Northern District's

Bankruptcy Judge Pamela Hollis in <u>In Re Kasco</u> (378 B.R. 207 (11/8/2007)).


<u>Underlying Policy</u>

As quoted above, §548 permits a trustee (but not a Chapter 7 Debtor), to set aside or obtain

other relief for transfers for less than full and adequate consideration if the conditions specified in

that section are satisfied.

Under Chapter 13, Debtors who, as here, are in possession of the Estate, possess the avoiding

powers of a trustee in bankruptcy (see legislative history to 11 U.S.C. §323; <u>Einoder</u>, 55 B.R. 319

(Bankr. N.D. Ill. 1985); <u>Robinson</u>, 80 B.R. 455 (Bankr. N.D. Ill. 1987)).

However, as Debtors-in-Possession, the Debtors may not use a proceeding under §548 for

their <u>sole</u> benefit but rather may use such an avoidance proceeding only if creditors holding

unsecured claims would be substantially benefitted from a successful avoidance action.  Here, as

pointed out in the briefings before the Bankruptcy Court (Appendix E, p. 4 including footnote 2),

Debtors' Chapter 13 Plan and schedules filed with the Bankruptcy Court reveal that if the instant

adversary proceeding is successful, General Unsecured Claims ("GUSC") will be paid in full

(100%).  In contrast, if the debtors' effort under Section 548 is unsuccessful, GUSC will be paid

significantly less: nominally 35% (the guaranteed minimum as set forth in the Plan) or *de facto* 48%.

Because the plain policy underlying Section 548 is to protect and enhance the position of

general unsecured creditors, any ambiguity in Section 548 should be construed liberally in favor of

recovery for the Estate.  Here, because the real estate in question had been inherited (Appendix A,

-9-

Complaint, ¶12) and was free and clear, the equities and Title 11 policy both  lie against permitting the tax purchaser and/or its purported assignee Midwest from retaining a gross windfall on account of Debtors' temporary and now resolved financial incapacity and in favor of the Estate on behalf of GUS claimants.  (Wellman v. Wellman, 933 F.2d 215 at 218 (4th Cir.) (holding that there is no recovery for the benefit of the estate "when the result is to benefit *only* the debtor rather than the estate" (quoting 4 Collier on Bankruptcy, ¶550.02 n.3 (15th ed. 1979))); Join-In Int'l (U.S.A.) Ltd. v. New York Wholesale Distributors Corp., 56 B.R. 555 at 561 (Bankr. S.D.N.Y 1986) ("[I]f the recovery of the alleged fraudulent conveyance will *solely* benefit the debtor it will not be permitted to maintain the proceeding."); 5 Collier on Bankruptcy ¶550.02 [2] (15th ed. Rev. 2004) ("thus, in general, the trustee or debtor in possession may not recover the property transferred or its value when the result is to benefit *only* the debtor rather than the estate.").

## Review of Illinois State Law

Bankruptcy Judge Katz in McKeever analyzed the Illinois law of real estate tax sale as containing multiple transfers:

(1) "The first **transfe**r occurred when the tax lien attached to the property and the debtors' interest became subject to such lien."  132 B.R. at 1008

(2) "[A] second **transfer** occurred when the property was sold at annual tax sale. (*ibid*.) This tax sale gave rise to a "new set of rights" as set forth in McKeever's footnote 5. ***  "Although the debtors retained title to the real estate as part of their right to redeem from the tax sale, upon expiration of the redemption period, the tax sale purchaser could move to divest them of title by proceeding to obtain a tax deed.  Clearly these rights and conditions arose separately from the prior

tax lien transfer [#1 immediately above]  and constituted a **new transfer** within the meaning of §101(54) and §548." (132 B.R. at 1009)

(3) "The expiration of the redemption period and the resulting *right* [not the exercise of that right] to proceed to tax deed, therefore, fundamentally alerted the rights of the parties.  The debtors were involuntarily divested of their remaining ownership rights[1] at that time, resulting in a transfer within the meaning of §101(54) and §548."  (132 B.R. at 1009)  "Prior to that time [the expiration of the redemption period], the tax sale purchaser held only certain lien rights ... whereas after that time the tax sale purchaser held equitable title[2] subject only to the formalities of perfection.   This fundamental shift constitutes **a transfer** of the property of the debtors to the tax sale purchaser ..." (132 B.R. at 1010)

(4) "If an application for tax deed is timely filed, equitable title[4] to the property **passes** to the tax sale purchaser subject to his obligation to prove-up his case... " (132 B.R. at 1010).    This language was, in turn, uncritically quoted by Bequette approximately four years later in 1995 and has now been expressly relied upon by the Bankruptcy Judge Black, below (Appendix C, p. 9, lines 20,

---

[1]This appears wholly and inexplicably contradictory to the court's statement made just a sentence earlier: "Until such exercise [the exercise of the right to obtain to actually obtain the tax deed following expiration of the redemption period], the Certificate of Purchase does not transfer any ownership interest in the property and legal title remains with the debtors. (132 B.R. also at 1009).

[2]The McKeever court appeared to make inconsistent statements (compare transfer #3 with transfer #4)  as to when equitable title, in its view, passes.  Per City of Chicago v. City Realty Exchange discussed in the text, *infra*, neither view is consistent with the pronouncement of Illinois courts as to when equitable title passes.

-11-

21).

(5) "The tax deed itself represents **yet another transfer** which occurred within one year[3] of the filing of the petition." (132 B.R. at 1009; accord, Moureau, 147 B.R. at 442, point 4, and Butler, 171 B.R. at 325, point 4)   The Court continued to note that the tax sale purchaser "receive[s] legal title via tax deed," but that such legal title was defeasible if the grantee in that deed fails "to properly record that deed within one year of the expiration of the redemption period.  Unless the tax deed is recorded, it will become null and void by operation of law".  (132 B.R. at 1010)   *Based upon this observation alone contained in McKeever, the bankruptcy court below committed reversible error in that Debtors seek to avoid this type of transfer as is their right under Section 548(a) permitting avoidance of "any transfer."*

The McKeever court was surely correct in stating that legal title did not pass until the occurrence of transfer #5 identified by the court.  The court was also surely correct in recognizing that "record title" did not pass under the recording of the tax deed.  However, in stating in inconsistent fashion without citation to any authority that equitable title passed as "transfer #3" and/or  "transfer #4" (hence the inconsistency),  the court failed to consider that the right of possession–which invariably follows equitable title–does not pass at either alleged transfer #3 or #4!  In fact,  the right of possession is governed by 35 ILCS 200/22-40(c) which provides that the defaulting property owner does not lose his right of possession until there is a "tax deed grantee"

---

[3]P.L. 109-8 changed the Section 548 look back/limitations period from one year to two years, effective for cases, as here,  commenced under title 11 more than 1 year after the April 20, 2005 date of enactment. (see, Section 1406(b)(2) of P.L. 109-8).

<u>The Court Below and the McKeever line of cases Err in their Understanding of Illinois Law</u>

The first fundamental error of the <u>McKeever</u> court's analysis is to have asserted--without citation to authority and through an overlooking of possessory rights--that equitable title passes either upon expiration of the redemption period (repeated by the court below at lines 20, 21 at page 9 of Appendix C) or upon the making of an application for tax deed thereafter.  Illinois law plainly says that equitable title does not so pass at either such point in time.   Quite to the contrary, Illinois courts hold: "A certificate of purchase for delinquent taxes is a species of personal property, assignable by indorsement; but until expiration of the period of redemption **and _issuance_ of the tax deed based on it, no interest, _equitable_ or legal is acquired on the land described in the certificate**. <u>Wells v. Glos</u>, 277 Ill. 516, 115 N.E. 658." (<u>City of Chicago v. City Realty Exchange, Inc.</u>, 127 Ill.App.2d 185 at 190 (First District 1970)).  Oddly, other portions of this case were expressly referenced by the <u>McKeever</u> court (132 B.R. at 1006) but this key statement of the Illinois court was overlooked in the discussion of Illinois law at 132 B.R. 1005-1007.    Plaintiffs-Appellants respectfully submit that both <u>Bequette</u> and the court here below were and are in error in uncritically accepting <u>McKeever</u>'s misstatement of Illinois law on this point.  That is, even following expiration of the period of redemption, the defaulting property tax owner who had failed to pay the real estate taxes retained both legal and equitable title, even though "he can do nothing[4] to prevent issuance of a deed to the tax purchaser."

Bankruptcy Judge Perkins in <u>McKinney</u> provides  the necessary corrective in the bankruptcy context to the <u>McKeever</u> court's error of law:

It is the tax deed alone that conveys title the property and gives the tax deed grantee

---

[4]under state law.

-13-

the right to possession (35 ILCS 200/22-40(c)).  Until the tax deed is ***issued***, title, the right to possession and all other incidents of ownership remain with the debtor. Moreover, unless the tax buyer obtains the records the tax deed within one year after the time for redemption expires, his rights become "absolutely void." (35 ILCS 200/22-85).  **These provisions refute the notion that the debtor's interest is lost automatically when the redemption period expires postpetition**. (341 B.R. at 897, 898)

Judge Perkins plainly added the word "post-petition" because of the context of that case but the very same reasoning, based upon Illinois law, also applies where the redemption period expires pre-petition.  This had been made clear by Judge Perkins a short time earlier in his opinion:

All of the incidents of ownership remain vested in the debtor including title, the right to exclusive possession, the right to income, the right to encumber and the right to sell.  The debtor's interest is subject to divestment only upon the occurrence of certain future contingencies including a failure to redeem by the debtor or any lienholder, compliance by the tax buyer with all statutory requirements, **and issuance of a tax deed by the court**." (341 B.R. at 897).

But, having identified these five events of transfer, Judge Katz in McKeever then inconsistently reasoned, as already noted, that "the debtors were involuntarily divested of their remaining ownership rights[5]"at the time of the transfer #3 above (expiration of the redemption

---

[5]As just explained above, this statement was simply not an accurate statement of Illinois law. To wit, as noted by Judge Perkins in McKinney and by the Illinois Appellate Court in City Realty Exchange, "until expiration of the period of redemption ***and*** issuance of the tax deed based on it, no interest, equitable or legal is acquired on the land described in the certificate" (citing to the Illinois Supreme Court decision in Wells v. Glos).  Bankruptcy Judge Perkins, correctly interpreting and following Illinois law, corrects Judge Katz through writing in McKinney: "Some courts ...have jumped ... to the conclusion that when the redemption period expires ... the debtor loses his interest in the property...  That assumption is contrary to both Illinois law and bankruptcy law.  It is the tax deed alone that conveys title to the property and gives the tax deed grantee the right to possession.  *** Until the tax deed is issued, title, the right to possession and all other incidents of ownership remain with the debtor.  (341 B.R. at 898).  Therefore, SIPI's assertion below (Appendix F-1, p.2)

-14-

period), "resulting in a transfer within the meaning of §101(54) and §548." (*idib*.)  We say "inconsistently reasoned" because if complete divestiture of ownership rights occurred at the expiration of the redemption period, then what how and to what effect are additional subsequent transfers identified by Judge Katz' opinion particularly in light of Section 548's express text that "any transfer" meeting that section's other requirements may be avoided?  Similarly, "[t]his fundamental shift constituted a transfer of the property of the debtor to the tax sale purchaser which occurred within one year of the filing of the petition." (132 B.R. at 1010).   The progeny of McKeever assumed, with some warrant based upon dicta in McKeever as explained below,  that  Judge Katz had reasoned--after having identified one of the five transfers (namely transfer #3) as "a" (not "the") transfer under Sections 101(54) and Section 548–that neither transfer #4 (making of application for tax deed following expiration of period of redemption)  nor transfer  #5 (issuance of tax deed) could be additional transfers for purposes of Sections 101(54) and Section 548.

But the McKeever court did not necessarily so ***hold*** because, on the facts of McKeever, it was not necessary for that court to reach that issue.   To wit, the debtors in McKeever, who were prosecuting the avoidance action,[11] argued that a Section 548  transfer occurred *either* upon issuance of the tax deed on 9/9/88 or upon expiration of the redemption period on 8/10/88.  (132 B.R. at 1008).  The tax sale purchaser-defendant argued that "the" transfer occurred much earlier "when the

---

that Judge Katz' mere dictum is well- or long-settled law is a preposterously false assertion. Plaintiffs ask this court to correct Judge Katz' misstatement of Illinois law and to adopt Judge Perkins correct understanding of it.

[11]McKeever was a Chapter 7 proceeding where the Debtors, not the Trustee, were allowed to prosecute the avoidance action but only to the extent of their homestead exemptions (132 B.R. at 1004).

-15-

judgment of sale was entered against the property in favor of the local government" such that the subsequent tax sale and tax deed were ancillary to and part of the "judgment of sale transfer." (*ibid.*). At this point in its opinion, the McKeever court correctly rejected the defendant's argument of "unitary transfer" by stating: "this argument fails to recognize that under the Illinois tax sale provisions there are a ***series of transfers*** which may occur and that the tax sale purchaser receives certain ownership-type rights which are separate and distinct from the tax lien rights previously held by the local government." 132 B.R. at 1008.

The McKeever court then concluded that transfer #3 which had occurred on 8/10/88–namely, expiration of the redemption period–was ***a*** Section 548 transfer and fell within Section 548's then one year (now two year) lookback or limitations period (because the bankruptcy petition date was 8/10/89) such that the plaintiff's avoidance proceeding was timely and not subject to dismissal. Therefore, it was unnecessary for the McKeever court to determine whether transfers #4 (application for tax deed) and #5 (issuance of tax deed) were also Section 548 transfers. Perhaps tellingly, Judge Katz used the following language: "Thus, within the meaning of §548(d), the transfer to be avoided ***here*** occurred upon the expiration of the redemption period." (132 B.R. at 1010, emphasis added). The use of the word "here" suggests that Judge Katz' found it unnecessary to determine whether the subsequent issuance of the tax deed was also an avoidable transfer; it was sufficient for ruling purposes in the case before him to determine that an avoidable transfer had occurred at the expiration of the redemption period within two years of the commencement of the adversary proceeding. Judge Katz' need not be seen as determining whether or not additional avoidable transfers occurred subsequent to the expiration of the period of redemption. Yet, the court below did not focus upon or analyze the significance of the word "here" quoted by it from McKeever

-16-

(Appendix C, page 11, line 5), despite the material difference between McKeever where the period

of redemption expired within the two year period and the instant case where the period of redemption

expired beyond or outside the two year period.

Similarly, in Moureau and Butler, the other two cases relied upon by the moving defendants,

the expiration of the redemption period fell within the lookback/limitations period of Section 548(a)

and it was not necessary to determine whether transfers #4 and #5 were also Section 548 transfers.

Therefore, none of the three cases relied upon by the moving defendants actually determined or held

that the issuance of a tax deed is NOT an avoidable transfer under Section 548.


The Court Below and the McKeever line of cases Err in Reading 11 U.S.C. Section 548

However,   the McKeever court, in dicta, then went on to state "within the meaning of

Section 548(d), *the* [not "a"] transfer to be avoided here occurred upon the expiration of the

redemption period." 132 B.R. at 1010.    In so stating, the McKeever court engaged in a shift of

thinking from "*a*" Section 548 transfer to "*the*" Section 548(d) transfer to be avoided, and, unless

the Court was using the word "here" advisedly as suggested above,  thereby embraced the concept

of "unitary transfer" which Judge Katz had rejected just a short time earlier within the same opinion.

If that court was not using the word "here" advisedly, then by converting Section 548(d)'s

indefinite article "a" to the definite article "the,"  the McKeever court not only acted inconsistently

but misread or overlooked the precise terminology Section 548(d)(1) which states as follows:

> For the purposes of this section, *a* [not "the] transfer is made when such transfer is
> so perfected that bona fide purchaser from the debtor against whom applicable law
> permits such transfer to be perfected cannot acquire an interest in the property
> transferred that is superior to the interest in such property of the transferee, but if
> such transfer is not so perfected before the commencement of the case, such transfer

-17-

is made immediately before the date of the filing of the petition.

Two observations are in order.

First, both Section 548(d)(1) and 548(a) are phrased in terms of "a" transfer, not "the" transfer. This is consistent with the broad definition of transfer contained in Section 101(54) which defines the term "transfer" to include "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with (i) property; or (ii) an interest in property." Possessory rights are an "interest in property." Under Illinois law as noted above, these rights are not disposed of or parted with until after the tax deed is issued such that there is a grantee in the deed. Thus, any Section 101(54) transfer is within the scope of Section 548 and each of the five transfers identified by the McKeever court can be subjected to attack under Section 548, assuming the conditions for attack including timeliness of the bankruptcy petition and of the adversary complaint are satisfied. To wit, Section 548 expressly states: "The trustee may avoid **_any_** [not "the"] transfer ..." Here, the McKeever court identified five transfers. The Code (Section 548(a)) plainly states that "**_any_**" of these five transfers is subject to avoidance! It was, therefore, error for the McKeever court to make any assumption, at this point in his opinion, that there could be only one transfer under Section 548. This is the very error made by the Bankruptcy Court below. To wit, the Court below correctly framed the issue as follows:

> "The issue here is whether a 'transfer' occurred within two years prior to the petition
>
> date thereby making the transfer avoidable under Section 548." (Appendix C, p. 8,
>
> line 24 through p. 9, lin2).

But, the Court then committed an error of legal reasoning in next writing:

> "More specifically, the issue is whether the expiration of the redemption period

-18-

constitutes a transfer."

But, that is not the issue.   The issue is whether the execution of the tax deed, within the two year period of Section 548, constitutes a transfer.   The court below also could have, but did not, correctly frame the issue as follows:

"More specifically, the issue is whether the expiration of the redemption period constitutes the *only* transfer cognizable under Section 548."

Framing the issue in this manner would have alerted the court that an entirely different type of analysis would have been required to answer the question in the affirmative–an analysis that would in all likelihood lead to the opposite conclusion.

We say that the court below committed an error of legal reasoning because determining that the expiration of the redemption period outside the two year period constitutes a transfer does not rule out the possibility that one or more additional transfer may have later occurred within the two year period!  Indeed, as shown above,   McKeever itself expressly identifies additional transfers occurring after the period of redemption.  So, when at Appendix C, page 10, lines 2-9, the court below identifies a transfer occurring at the time the period of redemption expired, it failed to address or analyze the core of Plaintiffs' argument that another transfer later occurred at the time  the tax deed was issued and in so failing, committed a fundamental mistake of legal reasoning and an error of law.

Second, Section 548(d)(1) has the express function of extending the one or (now) two year lookback or limitations period of Section 548(a) by not counting transfers which had actually been made until the later time at which they are perfected. "Perfection," as set forth within the text of

Section 548(d)(1) itself. means that the actual transfer is or has become of such a legal quality that a bona fide purchaser **_cannot_** acquire (i.e. impossible to acquire) an interest in the property transferred that is superior to the interest in such property of the transferee.

It will be seen that it is not even necessary to refer to Section 548(d)(1) if an unperfected transfer has occurred within the lookback period!  It is only necessary to consider Section 548(d)(1) if an unperfected transfer occurred beyond the lookback period so as to bar a Section 548 avoidance action unless perfection occurred within the lookback period.

The simplest case to illumine this point is that of issuance of a tax deed which, as noted above, transfers both legal and equitable title and the right of possession.   Until recorded, the tax deed constitutes an unperfected transfer because if it is not timely recorded it becomes null and void and a bona fide purchaser from the debtor can, in such event, obtain an interest in the property superior to the grantee in the issued tax deed.

If such an unrecorded deed were issued within the lookback period, under the text of Section 548(d)(1), it would be subject to timely avoidance attack under Section 548 (with the last clause of Section 548(d) expressly deeming, for Section 548(a) purposes, that unperfected transfer to have been made immediately before the date of the filing of the petition).

If such a deed had been issued beyond the lookback period, then a Section 548 attack would be untimely if the recording likewise occurred beyond the lookback period but, on the other hand, timely if the recording occurred within the lookback period.

In the instant case, both the issuance of the deed (on April 15, 2007) and its subsequent recording (on May 19, 2005) occurred with the two year lookback period from the April 13, 2007 petition date.  As such, the Rule 12(b)(6) motions should have been denied by the court below.

Unfortunately, the McKeever court misread Section 548(d)(1) and ended up standing it on its head! To wit, the McKeever court recognized that the act of recording the tax deed constituted its perfection, stating : "Upon perfection, the effective date of the deed will relate back to the date on which the redemption period expired. The transfer would not be perfected and would not be deemed to have occurred until these procedures were completed." (132 B.R. at 1010) So far so good in terms of the need for perfection[7], keeping in mind, however, that the effective date of the deed is not the date perfection occurred and that such date–the date perfection occurred-- is the relevant date under Section 548(d)(1). The McKeever court then drew two conclusions, the first of which was also correct: "The possibility of a gap in perfection where the tax sale purchaser fails to properly apply for a tax deed, or where the tax deed is not perfected by record, supports the conclusion that the process consists of more than one transfer, and that a properly perfected tax deed does not relate back to the tax sale..." (Again, so far so good, especially keeping in mind his key statement, totally consistent with Section 548(d)(1), that "the transfer would not be deemed to have occurred until these procedures were completed.") But, then in a complete contradiction and non-sequitur, the McKeever court proceeded to draw its second conclusion, namely that a "properly perfected tax deed "rather" relates back

> to the date of expiration of the redemption period. Thus, within the meaning of
> Section 548(d), the transfer to be avoided here occurred upon the expiration of the
> redemption period. (132 B.R. at 1010)

No! Precisely to the contrary, the plain text of Section 548(d)(1) provides that the transfer under Section 548(a) is deemed not to have occurred until the time of perfection. There is no relation back

---

[7]The legal basis and legal significance for the court's claim that the effective date of the deed relates back to the expiration date of the redemption period are unexplained.

doctrine found in the text of Section 548(d)(1). The purpose of Section 548(d) is to grant additional, not less, time to the Debtor's Bankrutpcy Estate beyond the one or, now (under amended Section 548), two year period in the case of initially unperfected transfers and to measure the running of that one or two year period from the subsequent date of perfection. The key word in Section 548(d) is the word "when:" "A transfer (for Section 548(a) purposes) is made **when** such transfer is so perfected." That subsection, therefore, merely defines the *time* of transfer for purposes of Section 548(a), not *what* constitutes a transfer which is the role of Section 101(54). And "when" is defined as the time of perfection instead of any earlier time when an unperfected transfer is first made. In this regard, the McKeever court incorrectly measured the running of the period from the date of the unperfected transfer #3–expiration of the redemption period-- instead of from the date of its perfection as required by Section 548(d)!

The Red Herring Re: A Property Owner's Loss of Control Upon Expiration of Redemption Period

The court below relied upon a specific observation contained in Bequette and McKeever before it that after expiration of the period of redemption, the property owner "can do nothing to prevent issuance of a deed to the tax purchaser." (Appendix C, p.9, lines 17-18). This observation while correct is, however, shown to be entirely irrelevant as follows. But, Midwest's own argument below which corresponds to the position adopted by the bankruptcy court but which is far more detailed may first be noted. To wit, Midwest's Reply Memorandum (Appendix F-2, p. 2) states:

> Under the Illinois Revenue Act, to be valid, redemption must be made on or before the last day of the redemption period by the property owner or an interested party. In re Application of County Collector, 99 Ill. App. 2d 143, 241 N.E.2d 216 (3d Dist. 1968). ***Attempts to redeem after the expiration of the redemption period are a nullity***

*and have no effect.*   (emphasis added)

Midwest repeated the same proposition at the bottom of page 4 thereof:

> ... the McKeever court clearly explained that any attempts by the prior owner to redeem the property after the redemption period expires would be in vain."

This is a correct statement of Illinois law.  However, Midwest draws an incorrect conclusion, accepted by the court below (as already noted),  in then proceeding on to write:

> Accordingly, Debtors' interest in the property was extinguished on November 1, 2004. (ibid.)

This statement is a non-sequitur and ought be rejected for two reasons, now outlined below as (A) and (B).

(A) First, the test (and time of transfer) under Section 548(d)(1) is not when the Debtor's own ability or power to unilaterally control the outcome is lost (as it surely is at the expiration of the redemption period).  Rather, the Section 548(d)(1) test to determine at what point in time the transfer occurs is at what point in time--in a contest between the tax sale purchaser and a third party BFP-- the third party BFP can NEVER obtain superior title.

A simple example from a different, but analogous context illustrates this truth:

To wit, assume an owner of real estate deeds his property to Buyer A.    The deed is in proper form and substance and sufficient to divest the grantor of ownership, but Buyer A neglects to record it promptly.  In law, the grantor can do nothing to regain ownership (analogous to the inability of the owner to take steps to regain ownership after expiration of the period of redemption).  But, assume the same Seller then purports to deed his property a second time, this time to Buyer B, a bona fide purchaser for value,  who has knowledge that Seller had contracted to sell  the property to Buyer A

but had no knowledge of the issuance of the deed to Buyer A.  Buyer B records his deed before Buyer A records his earlier issued deed.    Certainly in a "pure race" jurisdiction [and possibly also in "pure notice" or "race-notice" jurisdictions (depending on the degree of notice required of the subsequent purchaser)] and contrary to Midwest's theory, Buyer B ends up with good title over and against Buyer A.  The fact that issuance of a deed by the Seller to Buyer A causes the Seller to lose unilateral control of the situation does not lead to the conclusion that Buyer A necessary prevails (i.e., ends up being the owner).  Buyer A had it perfectly within his power to "perfect" by promptly recording but failed to do so to his detriment.

This example is now applied to the tax sale context by direct analogy and application of the plain text of Section 548(d)(1).  Assume in the tax sale context that Buyer B obtained his deed from the Debtor after the expiration of the Debtor's redemption period and before issuance of the tax deed to Buyer A.

Now, paragraph (1) of Section 548(d) states with parentheticals added:

For the purposes of this section, a transfer is made when such transfer is so perfected that a bona fide purchaser (analogous to Buyer B) from the debtor (analogous to the Seller) against whom applicable law permits such transfer to be perfected <u>cannot acquire</u> an interest in the property transferred that is superior to the interest in such property of the transferee (analogous to Buyer A) ...

So, under Section 548(d)(1), the relevant inquiry as to the time of transfer (in the express words of Section 548(d)(1): "a transfer is made WHEN ...") is:  at what point in time is it the case that Buyer B "<u>cannot acquire</u> an interest in the property transferred that is superior to the interest in such property" held by Buyer A?  Under Illinois tax sale law, that point in time is only when Buyer A has recorded his tax deed.  At any and all points in time prior thereto including from and before the expiration of the period of redemption, it was a possibility that Buyer A–the grantee in the tax deed-

-24-

would fail to obtain and record his tax deed within the statutory period such that Buyer B would end up with superior and good title in the real estate.   In other words, prior to the recording of the tax deed, it was possible that Buyer B would "acquire an interest in the property that was superior to the interest of Buyer A (the tax deed grantee) which is merely formulating the result using the converse of the statutory language which defines the point of transfer as being that point when it is not possible (i.e., Section 548(d)(1) terminology of "cannot acquire an interest")  for Buyer B to end up being superior to the tax deed grantee. (Judge Katz's statement in McKeever (132 B.R. at 1010) that "absent a redemption, no third party could acquire a greater lien interest or take title free from this lien after such time" is incorrect, contradicted by Illinois tax sale law, and contradicted by Judge Katz's own statements which immediately follow including his observation: "If such an application is not properly filed, the lien represented by the Certificate of Purchase becomes invalid and is no longer enforceable by the tax sale purchaser." (132 B.R. at 1010))

(B) Second, as already noted, Midwest's conclusion quoted above: "Accordingly, Debtors' interest in the property was extinguished on November 1, 2004" is similarly false as a matter of Illinois law, whether in terms of equitable title, legal title or right to possession.  This Honorable Court should not adopt and embrace this legal falsity.

Midwest then goes on to state at p. 4 of its Reply (Appendix F-2):

Debtors confuse the effect of the Section by misinterpreting the meaning of the word 'perfected." Debtors suggest that this section has the effect of extending the two year period by not counting "transfers which were made until they were perfected." Response ¶33. Debtors misconstrue the word "perfected" here to mean the recording of a deed because such is required in connection with a statutory tax deed to place merchantable title in the tax buyer.

Midwest repeats the charge at the top of p. 5 of its Reply:

Debtors rely on In Re McKinney for the proposition that the recordation of a tax deed

results in the vesting of merchantable title to the property in the grantee.

Midwest's second sentence ("Debtors suggest ...") contained in the first quote immediately above is precisely correct because that is exactly what Section 548(d)(1) provides: unperfected transfers are not counted as being made until the date of their perfection and unperfected transfers that had not been perfected as of the Debtor's Petition Date are deemed by the very last clause of Section 548(d)(1) to have been "made immediately before the date of the filing of the petition."  Debtors have not confused the effect of Section 548 including paragraph (d)(1) with anything.   Debtors' argument about recording has nothing to do with placing merchantable title in the tax buyer. Nowhere in Debtors' previously filed response is merchantable title discussed.  Midwest's reference to merchantable title is a complete misunderstanding by Midwest of Debtors' argument and a red herring.  Rather, Judge Katz recognized that recording of the tax deed was necessary to perfect both the transfer made by the tax deed and the earlier transfer of a Debtor's unilateral ability (right) to control the outcome that occurred at the time redemption rights expired.   Judge Katz  wrote in McKeever:

> Unless the tax deed is recorded, it will become null and void by operation of law. *** Upon perfection, the effective date of the deed will relate back to the date on which the redemption period expired. ***_The transfer would not be perfected and would not be deemed to have occurred until these procedures were completed_.***"
> (132 B.R. at 1010)

Thus, Judge Katz noted that the transfer would not be perfected and would not be deemed to have occurred until these procedures including the recording of the tax deed were completed.  But, Judge Katz failed to consider and thereby overlooked that this is the date plainly identified by Section 548(d)(1)!  And, absent such recording, Judge Katz  wrote, as just quoted, that the tax purchaser's

rights become null and void, notwithstanding the previous expiration of the redemption period.

Judge Katz's fundamental error of dictum was to import, without any legal authority whatsoever, the concept of relation back into Section 548(d)(1). The text of that paragraph of the Bankruptcy Code simply does not permit such an importing and such importing constitutes an impermissible rewriting of the statutory text, wherein Congress deemed the date on which perfection occurs to be the date of transfer for §548 purposes, consistent with the policy purpose undergirding that section of the Bankruptcy Code, i.e., to bring any and all transfers for less than full and adequate consideration *perfected* within two years of the Petition Date back into the bankruptcy estate.

Midwest's Reply ends by arguing:

> Applying that rule to this case, the transfer occurred upon the expiration of the redemption period because after that date, ***the Debtors were*** incapable of redeeming the property and, therefore, ***incapable of selling any interest in the property which would have been superior to the interest then held by SI-PI***

As shown by the analysis above, the emphasized (bolded and italicized) assertion simply is not true. The Debtors were "not incapable of selling any interest in the property which would have been superior to the interest then held by SI-PI." The Debtors were capable of selling such an interest even though they themselves were not the ones *unilaterally* capable of making it superior! Whether an interest they sold to Buyer B subsequent to the expiration of their redemption rights entitling Buyer A (the tax sale purchaser) to a Certificate–would prove to be superior or subordinate to the rights of Buyer A could only be determined by the subsequent chain of events especially including Buyer A's compliance with each and every statutory requirement for perfection, including timely recording of the tax deed.

Conclusion to Argument

Under Illinois law, the Debtors suffered an involuntary transfer of legal and equitable title to their home upon the issuance of the tax deed.  Such transfer was perfected by the recording a few days later of that deed.  For purposes of Section 548(a), the time of the transfer was deemed by Section 548(d) to be the date of recording ("perfection").  This adversary proceeding was therefore timely commenced within two years of the deemed date of transfer determined under Section 548(d)(1), namely the date of recording of the deed.

The fact that the expiration of the redemption period affected Debtors' rights does not justify the assumption that no subsequent transfers within the meaning of the Bankruptcy Code could be made.  Moreover, such expiration, even if considered to be "a transfer" or even "the transfer," is not perfected until the subsequent recording of the tax deed.  Section 548(d)(1)'s plain text requires that the date of perfection be deemed to be the date of transfer for purposes of Section 548(a); therefore, the Section 548(a)  transfer date of any rights transferred on account of the expiration of the redemption period is not the expiration date but the date of recording of the tax deed, because that and only that is the date of perfection.

As the McKeever court stated later in its opinion, Section 548's focus "is to establish a procedure for recovering and bringing back into the estate property which at the time of the filing of the petition is not property of the estate and is not subject to the automatic stay" (132 B.R. 996 at 1011, citing to Belisle v. Plunkett, 877 F.2d 512 at 516 (7th Cir. 1989)).  Once property is so recovered, the adversary defendants suffering the avoided transfer become secured creditors (11 U.S.C. Section 550(e)(1)) whose claims fall within Chapter 13 Plan provisions for payment, cure and in certain cases modification of lien rights pursuant to Section 1322(b)(2) and (3).  These provisions,

-28-

in the nature of reorganization, override Section 108 which is intended to assist Chapter 7 trustees (see the excellent, extended explanation in <u>McKinney</u>, 341 B.R. at 898-902)

Finally, while both the court below (Appendix C, at page 10) and Midwest correctly note that the <u>McKinney</u> decision did not involve the question of whether the recording of a tax deed within two years of the Debtor's Petition Date could be set aside under Section 548 where the period of redemption expired outside that two year period, they both likewise fail to note that neither was this issue presented or decided in any of the cases on which either the court below or the defendants rely.

Accordingly, the instant case is a case of first impression.   Dicta in <u>McKeever</u> has been shown to be in error in that Judge Katz (i)  misunderstood and misstated when equitable title passes under Illinois tax sale law, (ii) overlooked that possessory rights can  not transfer until issuance of the tax deed,  and (iii) impermissibly, in dictum, attempted to rewrite the plain text of Section 548(d)(1) to add a relation-back doctrine.

There is no reason in law or in equity for this Honorable Court to embrace the incorrect dicta of <u>McKeever</u> which would thereby convert--for the first time in this judicial district-- unfortunate dicta into a case holding, thereby denying the Debtors their lawful right to set aside the conveyance of their unmortgaged  homestead to a tax sale purchaser–a purchaser and/or its assignee which are now seeking to retain a large windfall,  *permitted under state law but not under Title 11*,  at the expense of the Debtors' general unsecured creditors.  Instead, this Honorable Court should confirm that the statement of Illinois tax sale law most recently set forth with great care by Judge Perkins in <u>McKinney</u> is accurate and ought now be implemented on the specific issue at hand, which is: does either a tax deed recorded within two years of the Petition Date and/or the termination of possessory rights within two years of the Petition Date constitute a transfer under Section 101(54) that may be

-29-

set aside under Section 548, even if the expiration of the period of redemption occurred outside that

section's two year period?

<u>CONCLUSION</u>

WHEREFORE, KEITH SMITH and DAWN SMITH pray that this Honorable Court (a) reverse, as to Counts III and IV of the Adversary Complaint, the Order of Dismissal in favor of the Defendants, thereby reinstating the Adversary Proceeding, (b) remand to the United States Bankruptcy Court for further proceedings on said Counts III and IV of the Adversary Complaint, (c) award Plaintiffs-Appellants their costs of appeal and (d) grant Plaintiffs-Appellants all other relief just and proper under the circumstances.

Respectfully submitted,

KEITH SMITH and DAWN SMITH.

By:_____
      Arthur G. Jaros, Jr., their attorney

Law Office of Arthur G. Jaros, Jr.
1200 Harger Road, Suite #830
Oak Brook, Illinois 60523
(630) 574-0525 Ext. 103

-31-