SMITH v. SIPI, LLC, et al.
1:07 cv 06534
Bankruptcy Appeal to the Honorable Ronald A. Guzman, Federal District Judge

# TABLE OF CONTENTS
## TO
### APPENDIX TO APPELLANTS' BRIEF

| | Docket # | Date | Appendix |
|---|---|---|---|
| ADVERSARY COMPLAINT | 1 | 4/13/07 | A |
| ORDER APPEALED FROM | 43 | 10/3/07 | B |
| ORAL RULING OF BANKRUPTCY JUDGE | | 9/28/07 | C |
| MOTIONS TO DISMISS | | | |
|     by Defendant SIPI | 12 | 6/8/07 | D-1 |
|     by Defendant MIDWEST CAPITAL | 18 | 6/22/07 | D-2 |
| RESPONSE to Motions to Dismiss by Plaintiffs/Debtors | 27 | 7/20/07 | E |
| REPLIES to Response | | | |
|     by Defendant SIPI | 30 | 8/3/07 | F-1 |
|     by Defendant MIDWEST CAPITAL | 33 | 8/6/07 | F-2 |
| SURREPLY by Plaintiffs/Debtors | 40 | 8/24/07 | G |
| NOTICE OF APPEAL | 45 | 10/8/07 | H |
| ADVERSARY CASE DOCKET LISTING | | 11/19/07 | I |
| TRANSCRIPT OF ORAL ARGUMENT ON MOTIONS TO DISMISS | | 8/31/07 | J |
| STATUTES INVOLVED | | | |
|     11 U.S.C. §101(54) | | | K-1 |
|     11 U.S.C. §548(a) and (b) | | | K-2 |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| Keith Smith and Dawn Smith, | ) | Case No. 07 B 6631 |
| Debtors | ) | |
| | ) | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -) | | Chapter 13 |
| Keith Smith and Dawn Smith | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Adversary No. _07-00239_ |
| | ) | |
| FIRST AMERICAN TITLE INSURANCE CO. | ) | |
| (d/b/a The Talon Group), | ) | |
| SIPI, LLC, and | ) | |
| MIDWEST CAPITAL INVESTMENTS, LLC | ) | |
| | ) | |
| Defendants. | ) | |

7001 (1),(2) AND (9) F.R.BANKR.P. ADVERSARY COMPLAINT
TO AVOID FRAUDULENT CONVEYANCE
AND
RECOVER TITLE TO REAL ESTATE AND/OR FOR OTHER RELIEF

NOW COMES the Plaintiff and Debtor, DAWN SMITH, by and

through her attorney, ARTHUR G. JAROS, JR. and complains of the

defendants FIRST AMERICAN TITLE INSURANCE COMPANY (hereinafter

"TALON GROUP" or "THE TALON GROUP"), SIPI, LLC (hereinafter

sometimes "SIPI") and MIDWEST CAPITAL INVESTMENTS, LLC

(hereinafter sometimes "MW CAPITAL") as follows:

### Parties

1.   Plaintiffs KEITH SMITH and DAWN SMITH are debtors and

APPENDIX A
R. 8001(b)(1)

debtors-in-possession in this Chapter 13 bankruptcy proceeding and are residents of Will County, IL.

2. Defendant TALON GROUP is a division of First American Title Insurance Company believed to be a California corporation and registered with the Illinois Secretary of State to engage in business within the State of Illinois.

3. Defendant SIPI, LLC, is a limited liability company formed under the limited liability company law of the State of Illinois.

4. Defendant MIDWEST CAPITAL INVESTMENTS, LLC, is a limited liability company formed under the limited liability company law of the State of Illinois.

<u>Jurisdictional Statement</u>

5. This court has jurisdiction pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157.

6. This adversary proceeding relates to the bankruptcy proceeding of the plaintiff DEBTORS under Chapter 13 of Title 11 of the United States Code known as cause number 07 B 6631 in the U.S. Bankruptcy Court for the Northern District of Illinois, Eastern Division.

7. Each count is a core proceeding under 28 U.S.C. §157(b)(2).

8. Venue lies in the Northern District of Illinois pursuant to

28 U.S.C. §1408 and §1409.

9.  DEBTORS filed their Voluntary Petition under Chapter 13 of Title 11 of the United States Code on April 13, 2007.

10. Each count of this civil proceeding is grounded on 11 U.S.C. Sec. 548 (pertaining to avoidance of Fraudulent Transfers and Obligations), Section 550 providing for recovery where Section 548 has application, and/or 7001(9) F.R.Bankr.P providing for related declaratory relief.

<u>FACTS COMMON TO ALL COUNTS</u>

11. At all relevant times, PLAINTIFFS have had and presently have as their principal residence, real estate commonly known as 720 Fox Street, Joliet, Will County, IL which property bears three real estate Permanent Index Numbers: 30-07-12-108-001-0000,  30-07-12-108-002-0000 and  30-07-12-108-003-0000 (the "HOMESTEAD").

12. From and after March 25, 2004 and at least until April 15, 2005, DAWN SMITH was the holder of record title to the HOMESTEAD, having inherited such property from an ancestor.

13. On November 2, 2001, real estate taxes for tax year 2000 for the HOMESTEAD were sold.

14. On information and belief, those taxes were sold to and/or the Certificate for such sold taxes issued to TALON GROUP or to

-3-

SIPI, LLC.

15.    On information and belief, TALON GROUP, if the holder of the
       Certificate referred to in the preceding paragraph,  assigned
       its rights under such Certificate to a company described as
       "SI-PI, LLC."

16.    On April 15, 2005, the County Clerk of the County Will
       executed a Tax Deed known as 04 TX 142 in favor of SI-PI, LLC,
       such deed being thereafter recorded on May 19, 2005 as Will
       County Recorder of Deeds #R2005082894 ("TAX DEED").

17.    By Warranty Deed dated August 10, 2005 and recorded August 17,
       2005   as   Will   County   Recorder   of   Deeds   #R2005141035
       ("SUBSEQUENT DEED"), a company described as "S.I.-P.I., LLC"
       purported to convey title to the HOMESTEAD to MW CAPITAL.

18.    MW CAPITAL presently claims to be the holder of record title
       to the HOMESTEAD.


<u>COUNT I</u>

FOR DECLARATION THAT TAX DEED AND WARRANTY DEED WERE INEFFECTIVE
TO TRANSFER TITLE TO THE HOMESTEAD

19.    The grantee in the TAX DEED, namely, "SI-PI, LLC" is a
       purported limited liability company which, in fact and in
       law, does not exist.

-4-

Prayer to Count I

WHEREFORE, Plaintiff prays that the Court determine and declare that the TAX DEED and WARRANTY DEED were ineffective to transfer title and that Plaintiff remained the titleholder to the HOMESTEAD as of the moment before the commencement of this Title 11 proceeding.

COUNT II

FOR DECLARATION THAT WARRANTY DEED WAS INEFFECTIVE TO TRANSFER TITLE TO THE HOMESTEAD

19.    The grantor in the WARRANTY DEED, namely, "S.I.-P.I., LLC" is a purported limited liability company which, in fact and in law, does not exist.

Prayer to Count II

WHEREFORE, Plaintiff prays that the Court determine and declare that the WARRANTY DEED was ineffective to transfer title to MW CAPITAL.

COUNT III

TO AVOID TAX DEED AS FRAUDULENT TRANSFER (11 U.S.C. SECTION 548)

19.    The TAX DEED, to the extent effective to transfer title, transferred an interest in the property of the Plaintiff

-5-

DAWN SMITH.

20. The transfer described in the preceding paragraph was made within two years before the date of the filing of the bankruptcy petition herein.

21. Debtor DAWN SMITH received less than a reasonably equivalent value in exchange for such transfer.

22. Debtor DAWN SMITH became insolvent as a result of such transfer.

                    Prayer to Count III

   WHEREFORE, Plaintiffs pray, as Debtors-in-Possession and having

the powers of a Trustee-in-Bankruptcy, hereby pray that this

Honorable Court (a) declare the transaction represented by the

Tax Deed to be a fraudulent conveyance and declare it avoided,

(b) if relief is granted Plaintiffs as sought by Count II above,

set aside the TAX DEED and place, by judicial declaration, legal

title to the HOMESTEAD in the DEBTORS-IN-POSSESSION on behalf of

the ESTATE IN BANKRUPTCY of DAWN SMITH, subject to the

requirements and/or conditions of Title 11, or, in the

alternative, and (c) to the extent PLAINTIFFS are not allowed to

recover title to the HOMESTEAD through this adversary proceeding,

for money judgment against SIPI for the value of the HOMESTEAD as

authorized by 11 U.S.C. Section 550(a),  subject to the

                            -6-

provisions of 11 U.S.C. Sections 548 and 550.    PLAINTIFFS also pray for all other relief just and proper under the circumstances.

<u>COUNT IV</u>

FOR RELIEF AGAINST MW CAPITAL
AS IMMEDIATE TRANSFEREE OF INITIAL TRANSFEREE

19-22)    PLAINTIFFS incorporate by reference paragraphs 19-22 of Count III.

23)    PLAINTIFFS are informed and believe that MW CAPITAL (a) had knowledge of the voidability of the transfer effectuated by the TAX DEED and/or (b) did not act in good faith.

Prayer to Count IV

WHEREFORE, pursuant to 11 U.S.C. Sections 548(a)(1)(B)(i) and (ii)(I) and 550(a)(2) and in addition to the relief sought by the preceding Counts, PLAINTIFFS pray that (a) title to the HOMESTEAD be recovered from MW CAPITAL, subject to the requirements and/or conditions of Title 11, or, in the alternative, and (b) to the extent PLAINTIFFS are not allowed to recover title to the HOMESTEAD through this adversary proceeding, for money judgment

-7-

against MW CAPITAL and/or SIPI for the value of the HOMESTEAD as

authorized by 11 U.S.C. Section 550(a),  subject to the

provisions of 11 U.S.C. Sections 548 and 550.  PLAINTIFFS also

pray for all other relief just and proper under the

circumstances.


Dated: April 13, 2007


                              KEITH SMITH and DAWN SMITH


                              By:  ARTHUR G. JAROS, JR.,
                                   their counsel



Arthur G. Jaros, Jr.
1200 Harger Road - Suite #830
Oak Brook, Illinois  60523
(630) 574-0525


                              -8-

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re:                            )

KEITH SMITH AND DAWN SMITH    )      Chapter 13
          Debtors          )

_____)      Case No: 07 B 6631

KEITH SMITH AND DAWN SMITH    )
          Plaintiffs,      )      Honorable Bruce W. Black
                          )

v.                              )
                          )      Adversary No: 07 A 00239

FIRST AMERICAN TITLE INSURANCE CO.   )
(d/b/a THE TALON GROUP),      )
SIPI, LLC AND            )
MIDWEST CAPITAL INVESTMENTS, LLC   )
          Defendant.      )

## ORDER

It is hereby Ordered that Defendants' Motion to Dismiss is GRANTED for failure to state a claim upon which relief can granted and the adversary proceeding is DISMISSED for those reasons stated on the record. Pursuant to Fed. R. Civ. Pro. 41 and Bankruptcy Rule 7041, dismissal is an adjudication on the merits and plaintiff is not granted leave to refile.

DATE: _/0 - 3 -07_           ENTERED:

                                Bruce W. Black
                                Bankruptcy Judge

**APPENDIX B**
**R.8009(b)(3)**

1

```
 1              IN THE UNITED STATES BANKRUPTCY COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                       EASTERN DIVISION

 3

 4   In re:                        )
                                   )
 5   KEITH & DAWN SMITH,           ) No. 07 B 06631
                                   )
 6               Debtors.          )
     ------------------------------)
 7   KEITH & DAWN SMITH,           )
                                   ) No. 07 A 00239
 8               Plaintiffs,       )
                                   )
 9         vs.                     )
                                   )
10   SIPI,LLC, ET AL.,             ) Joliet, Illinois
                                   ) September 28, 2007
11               Defendants.       ) 11:00 a.m.

12

13        TRANSCRIPT OF PROCEEDINGS BEFORE THE
                HONORABLE BRUCE W. BLACK
14

15   APPEARANCES:

16   MR. ARTHUR JAROS
     on behalf of the debtors/plaintiffs;
17
     MR. GERALD MYLANDER
18   on behalf of the Chapter 13 Trustee.

19

20

21

22                        APPENDIX C
                          R.8009(b)(5)
23

24

25
```

2

1       MR. JAROS:  Your Honor, may I approach?

2       THE COURT:  We're about to call your case.

3       MR. JAROS:  Yes, thank you.

4       THE CLERK:  Smith.

5       THE COURT:  I think that's the last case.

6       MR. JAROS:  Yes, Judge, thank you.  Arthur

7  Jaros on behalf of the debtor/plaintiffs.  I

8  received a call this morning from Attorney Krockey

9  on behalf of SIPI.  He was indicating that all of

10  the defense counsel had conflicts, and he's

11  expecting the court to make a ruling on the

12  defendants' motion to dismiss, and he's asked that I

13  transmit that to them.

14       THE COURT:  And I am going to make an oral

15  ruling.  You can have a seat and I'll read this.

16  And everyone else is excused.

17            This matter is up for confirmation,

18  Mr. Mylander, I'm going to be denying -- oh, I'm

19  sorry, granting the motions to dismiss the adversary

20  proceeding.  I assume that means the debtor will

21  have to re-think this case.  And if you don't want

22  to wait around, you and Mr. Jaros can pick a date.

23            Come back November 2nd.  Does that

24  give you some time?

25       MR. JAROS:  Judge, may I approach?

3

1          THE COURT:  You may.

2          MR. JAROS:  Judge, actually, our plan is

3     formulated, and it's not dependent on the adversary.

4     We have a 35 percent plan, even if the adversary is

5     unsuccessful.  That's the minimum stated in the

6     plan.  It might approach almost 50 percent payout.

7     With a successful adversary, we'd be at a

8     100 percent plan, but the plan covers both

9     eventualities.  So we're not sure why confirmation

10    would be denied at this stage, Judge.

11         THE COURT:  No, I didn't intend to deny it.

12    I'm going to continue it, unless Mr. Mylander is

13    willing to recommend it at this point.

14         MR. MYLANDER:  Judge, I think Mr. Jaros and

15    I talked about this when we did the 341 meeting,

16    which is quite some time ago now.  If he's

17    comfortable with the plan going forward --

18    essentially there's two contingencies built into the

19    plan.  One is if they're successful and the other is

20    if they're unsuccessful.

21         And I think if they're unsuccessful,

22    they have got provisions in here to deal with it.

23    Essentially the debtor needs to be making payments

24    to our office to pay the unsecured debt, is the

25    bottom line.

4

1    I haven't looked at it in a while, I

2  must confess, but I think it's essentially in a

3  position to go forward.  But I don't know if any of

4  the creditors have any objections to the plan being

5  confirmed.  But if Mr. Jaros is comfortable with it

6  going forward, I think it's administrable as far as

7  we're concerned.

8        THE COURT:  All right.  And I'll confirm

9  the plan, on the condition that the creditors are

10  surprised by that, we'll listen to their objections.

11        MR. JAROS:  Sure.  Thank you, Judge.

12        THE COURT:  All right.

13        Both defendants have moved to dismiss

14  under Federal Rule of Civil Procedure 12(b)(6).  And

15  I'm granting the motion regarding Counts I, II and

16  III, and the claim regarding Count IV then becomes

17  moot.

18        The Chapter 13 debtor and plaintiff,

19  Dawn Smith, failed to pay the real estate taxes for

20  the year 2000 on a piece of property which she owned

21  in Will County, Illinois.  On November 2nd, 2001,

22  the real estate taxes for the year 2000 were sold to

23  one of the defendants, SIPI, LLC.

24        On the expiration of the redemption

25  period, a tax deed was issued in favor of SIPI on

5

1   April 15, 2005.  The home was subsequently conveyed

2   to the present title holder and another defendant,

3   Midwest Capital, on August 10th, 2005.

4           Although the debtor inherited the

5   property on March 25, 2004, over two-and-a-half

6   years after the real estate taxes for the year 2000

7   were sold to SIPI, she inherited the property before

8   the statutory period of redemption expired on

9   November 1, 2004.

10          The debtor filed her Chapter 13

11  bankruptcy petition with a co-debtor spouse on

12  April 13, 2007.  On that same date, the debtors

13  commenced this adversary proceeding by filing a

14  four-count complaint.

15          The debtors seek in Count I a

16  declaration that the tax deed and warranty deed were

17  ineffective to transfer title to homestead; in Count

18  II, a declaration that the warranty deed was

19  ineffective to transfer title to homestead; in Count

20  III, they seek to avoid the tax deed as a fraudulent

21  transfer under Section 548 of the bankruptcy code;

22  in Count IV, they seek relief against Midwest

23  Capital as the immediate transferee of an initial

24  transferee.

25          On June 8, 2007, the defendant, SIPI,

6

1   filed a motion to dismiss the complaint.  On

2   June 22nd the other remaining defendant, Midwest

3   Capital, filed a motion to dismiss the adversary

4   complaint for failure to state a claim upon which

5   relief can be granted pursuant to Federal Rule of

6   Bankruptcy Procedure 7012 and Federal Civil Rule

7   12(b)(6).

8           The motions have been fully briefed

9   and for the following reasons the defendants'

10  motions to dismiss will be granted regarding all

11  counts:

12          First of all, regarding the applicable

13  standard, "Pursuant to Bankruptcy Rule 12(b), Rule

14  12(b)(6) of the Federal Rules of Civil Procedure

15  applies to motions to dismiss adversary actions in

16  bankruptcy proceedings for failure to state a claim

17  upon which relief may be granted."

18          A movant will prevail on a Rule

19  12(b)(6) motion only when even assuming, "the well

20  pleaded factual allegations of the complaint and all

21  reasonable inferences most favorable to the

22  plaintiff which follow from the allegations are

23  true, and 'the complaint does not state a cause of

24  action upon which relief may be granted.'"  And that

25  is from Corcoran and Chicago Park District, 875

1   Federal Reporter, 2nd Series, 609 at page 611, a

2   1989, Seventh Circuit opinion.

3          The complaint should not be dismissed

4   unless it appears beyond doubt that the plaintiff

5   can prove no set of the facts in support of the

6   claim which would entitle him to relief.  Same cite.

7          In addition, on the defendants' motion

8   to dismiss the, court will, therefore, assume the

9   facts pleaded in the debtors' complaint and the

10  reasonable inferences most favorable to the debtor

11  which follow therefrom are true.  And I'll cite,

12  McKeever, 132 Bankruptcy Reporter 996 at 1000, a '91

13  Northern Illinois Bankruptcy opinion.

14          Regarding Counts I and II, in Count I,

15  the debtors seek a declaration by this court that

16  the tax deed and warranty deed were ineffective to

17  transfer title to homestead.  Likewise, in Count II,

18  they seek a declaration that the warranty deed

19  transferring the home to Midwest Counsel (sic) was

20  ineffective.

21          The debtors assert that the transfers

22  were ineffective because the grantee in the tax

23  deed, "capital S, capital S, hyphen, capital P,

24  capital I, comma, capital, L, capital, L, capital

25  C," does not exist.

8

1      However, defendants' claim that the

2  misnomer on the certificate is inadvertent, and the

3  intended grantee was a similarly named entity, which

4  is exactly the same but without the hyphen.  The

5  debtors claims fail because the misnomer in the deed

6  does not cause the transfers to be ineffective.

7      It is a, "well-settled rule that where

8  the parties intend to pass a present estate to an

9  existent grantee, but under a name other than the

10 correct one, such a conveyance passes title to the

11 intended grantee."  Chance and Kimbrell, 376

12 Illinois 615 at pages 621 to 622, a 1941 Illinois

13 Supreme Court case.

14      Even if the factual allegations of the

15 complaint are true, the debtors are not entitled to

16 relief on that basis.  For these reasons,

17 defendants' motion to dismiss is granted as to

18 Counts I and II.

19      Regarding Count III, there the debtors

20 seek to avoid the issuance of the tax deed as a

21 fraudulent transfer pursuant to Section 548.  Under

22 that section, a transfer of the property must have

23 occurred within two years prior to the filing of the

24 debtors' bankruptcy petition.  The issue here is

25 whether a "transfer" occurred within two years prior

9

1   to the petition date thereby making the transfer

2   avoidable under Section 548.

3           More specifically, the issue is

4   whether the expiration of the redemption period

5   constitutes a transfer.  The definition of transfer

6   in the code is very broad.  Section 101(54) states

7   that the term transfer means, "Each mode, direct or

8   indirect, absolute or conditional, voluntary or

9   involuntary of disposing of or parting with - (i)

10  property; or (ii) an interest in property."

11          In this case the expiration of the

12  redemption period, which occurred on November 1,

13  2004, constituted a transfer.  As the Court in re:

14  Bequette, B-e-q-u-e-t-t-e, explained, "upon

15  expiration of the redemption period, the owner loses

16  all interest in the property, including the right to

17  redeem, and can do nothing to prevent issuance of a

18  deed to the tax purchaser.  (Internal citations

19  omitted.)

20          "At that time the tax purchaser

21  acquires equitable title to the property and has the

22  right to obtain legal title by proving compliance

23  with the statutory requirements."  That's at 184

24  Bankruptcy Reporter 327 at page 336.  And that's a

25  Southern District of Illinois Bankruptcy decision.

10

1    See also McKeever at page 1010.

2              The debtors' loss of interest in the

3    home upon the expiration of the redemption period

4    undoubtedly falls within the definition of transfer

5    in the code.   In other words, it is an involuntary

6    parting with an interest in property.   Because the

7    transfer occurred more than two years prior to the

8    filing of the bankruptcy petition, it is not

9    avoidable under Section 548.

10              The debtors contend that the

11   controlling cases on this issue, specifically

12   McKeever, contain fundamental errors of law which

13   have been noted by Bankruptcy Judge Tom Perkins in

14   the case of in re:  McKinney, which is found at 341

15   Bankruptcy Reporter 892.   And that's a Central

16   District of Illinois case from 2006.

17              However, McKinney does not apply in

18   the instant case for many reasons.   First, the issue

19   in McKinney was the effect of the expiration of the

20   redemption period post-petition.   Here, the

21   redemption period expired pre-petition.   Second,

22   McKinney did not resolve the issue presented in the

23   case at hand.   Instead, McKinney merely put forward

24   the issue and speculated on a position.   Judge

25   Perkins concluded that, "This issue remains for

11

1    another day."  And that's McKinney at 898.

2                As far as I'm concerned, the truth of

3    the matter does not remain for another day.

4    McKeever and subsequent cases have unambiguously

5    held that, "The transfer to be avoided here occurred

6    upon the expiration of the redemption period."  And

7    that's McKeever at 1010.  Because the transfer

8    occurred more than two years prior to the filing of

9    the bankruptcy petition, it is not avoidable under

10   Section 548.

11               For the foregoing reasons, the

12   defendants' motions to dismiss Count III are

13   granted.

14               Regarding Count IV, in that count

15   debtors seek relief against Midwest Capital as the

16   immediate transferee of the initial transferee,

17   SIPI.  Count IV alleges that Midwest Capital had

18   knowledge of the voidability of the transfer

19   effectuated by the tax deed and did not act in good

20   faith.  Because the transfer was not avoidable under

21   Section 548, the issue is moot.

22               Accordingly, both motions to dismiss

23   are granted pursuant to Federal Rule of Civil

24   Procedure 41 and Bankruptcy Rule 7041.  This

25   dismissal is an adjudication on the merits, and the

12

1    plaintiff is not granted leave to refile.

2              This is one of the unusual

3    circumstances under notice pleading in the federal

4    courts where the plaintiff has pleaded facts which

5    show conclusively that plaintiff is not entitled to

6    relief.  So the motion is granted.

7              Thank you for your patience.

8                        (Which were all the proceedings
                         had in the above-entitled cause,
9                        September 28, 2007.)

10

11   I, LISA BRESNAHAN, DO HEREBY CERTIFY THAT THE
     FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT OF
12   PROCEEDINGS HAD IN THE ABOVE-ENTITLED CAUSE.

13

14

15

16

17

18

19

20

21

22

23

24

25

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | |
|---|---|
| IN RE: | ) 07 B 6631 |
| | ) |
| KEITH SMITH and DAWN SMITH, | ) Chapter 13 |
| | ) |
| Debtors, | ) Judge Bruce Black |
| | ) |
| KEITH SMITH and DAWN SMITH, | ) |
| | ) 07 A 00239 |
| Plaintiffs, | ) |
| vs. | ) |
| | ) |
| FIRST AMERICAN TITLE INSURANCE | ) |
| CO., SIPI, LLC, ET AL., | ) |
| | ) |
| Defendants. | ) |

## MOTION TO DISMISS ADVERSARY COMPLAINT
## FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF
## CAN BE GRANTED PURSUANT TO BANKRUPTCY COURT
## RULE 712 AND FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

NOW COMES the Defendant, SIPI, LLC, by and through its'
attorneys KROCKEY, CERNUGEL, COWGILL, CLARK & PYLES, LTD., ROBERT
S. KROCKEY and TIMOTHY A. CLARK, of counsel, and for its' Motion to
Dismiss the Adversary Complaint filed herein for failure to state
a claim on which relief can be granted, states as follows:

1.   That on April 13, 2007, the debtors herein, KEITH SMITH
and DAWN SMITH, filed this adversary proceeding as the Plaintiffs
therein.

2.   That the Debtor's filed their Chapter 13 Bankruptcy
Petition in this cause was also filed on April 13, 2007.

3.   That SIPI, LLC is named as one of the Defendants in the
Adversary Complaint filed herein.

**APPENDIX D-1**
**R.8009(b)(6)**

4.    That Federal Bankruptcy Court Rule 712, incorporates and makes applicable Federal Rule of Civil Procedure 12(b) to this proceeding.

5.    That the Adversary Complaint filed by the Debtors' herein seeks to set aside the transfer of the debtors' former real estate, pursuant to State Court Tax Deed proceedings initiated in and by orders entered by the Circuit Court of Will County, Illinois. Attached hereto and made a part hereof is a copy of the Take Notice served upon the debtors, indicating that the period of redemption for the tax sale that the debtors' property was subject to and that the Tax Deed proceedings were based upon, expired on November 1, 2004.

6.    That Section 548 of the Bankruptcy Code (11 U.S.C. 548) requires that the transfer sought to be set aside must have occurred within two (2) years prior to the filing of the debtors' Bankruptcy Petition.

7.    For purposes of Section 548, the transfer of the property that is the subject of tax deed proceedings occurs upon the expiration of the period of redemption from the tax sale filed pursuant to Illinois State Law. See In Re McKeever, 132 BR 996 (Bankr.N.D.Ill. 1991); In Re Butler, 171 BR 321 (Bankr.N.D. Ill. 1994); and In Re Moureau, 147 BR 441 (Bankr.N.D.Ill. 1992).

8.    Accordingly, based on the date of the expiration of the period of redemption (November 1, 2004), and the date on which the Debtor-Plaintiffs' filed their Bankruptcy Petition (April 13,

2007), the Debtor-Plaintiffs' Adversary Complaint seeks to set aside a transfer that occurred more than two (2) years prior to the filing of the Debtors' Petition, and therefore, the Adversary Complaint is substantially insufficient at law, as it sets forth no cause of action on which relief can be granted.

9.   Additionally, with regard to Count II of Debtor-Plaintiffs' Adversary Complaint and the prayer for relief therein, the issue raised by the Debtor-Plaintiff regarding the misnomer is not a basis to vacate or vary any of the transfers complained of. Pursuant to 35 ILCS 5/22-40, such a misnomer is not a basis for setting aside a Tax Deed pursuant to Illinois law.

WHEREFORE, the Defendant, SIPI, LLC, prays that this Honorable Court enter an Order dismissing the Plaintiff-Debtor, DAWN SMITH'S Adversary Complaint filed herein, pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Bankruptcy Rule 712 for its failure to state a cause of action on which relief can be granted for the reasons aforesaid.

Respectfully submitted,

SIPI, LLC, Defendant

By: /s/ Timothy A. Clark
    One of its Attorneys

Robert S. Krockey - 01532316
Timothy A. Clark - 06200999
KROCKEY, CERNUGEL, COWGILL,
CLARK & PYLES, LTD.
3100 Theodore St., Ste. 101
Joliet, IL 60435
(815) 729-3600

TAX DEED NO. 04-TX-_142_    FILED July 23, 2004

### TAKE NOTICE

TO: NANCY SHULTZ VOOTS, WILL COUNTY CLERK; EARL A. PLUTZ; RUTH M. PLUTZ; DAWN SMITH; UNKNOWN HEIRS AND DEVISEES OF EARL A. PLUTZ AND RUTH M. PLUTZ;    UNKNOWN OWNERS OR PARTIES INTERESTED; AND NONRECORD CLAIMANTS.

This is NOTICE of the filing of the Petition for Tax Deed on the following described property:

LOTS 253, 254 AND 255 IN HIGHLAND PARKSIDE, A SUBDIVISION OF PART OF THE NORTHWEST QUARTER OF SECTION 12 IN TOWNSHIP 35 NORTH, RANGE 10 EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED JUNE 9, 1923, IN PLAT BOOK 17, PAGES 40 AND 41, AS DOCUMENT NO. 355753, SITUATED IN WILL COUNTY, ILLINOIS.
Parcel Index Number 07-12-108-001-0000, 07-12-108-002-0000 and 07-12-108-003-0000

On November 15, 2004 at 8:30 a.m., River Valley Justice Center. the Petitioner intends to make application for an order on the petition that a Tax Deed be issued. The real estate was sold on November 2, 2001 for general taxes of the year 2000. The period of redemption will expire November 1, 2004 at 4:30 PM.

Gene Turk, Attorney for Petitioner
(618) 457-4334

Please mail bill to: SI-PI, LLC, P.O. Box 3074, Carbondale, IL 62902;
Telephone (618) 457-4334
Cert. # 00-02338, 00-02339 and 00-02340

"EXHIBIT A"

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| Keith Smith and Dawn Smith, | ) | No. 07 B 6631 |
| | ) | Chapter 13 |
| Debtors | ) | Judge Bruce W. Black |
| | ) | |
| Keith Smith and Dawn Smith, | ) | Adversary Proceeding |
| | ) | No. 07-00239 |
| Plaintiffs | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| First American Title Insurance Co. (d/b/a The | ) | |
| Talon Group), SIPI, LLC, and Midwest Capital | ) | |
| Investments, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MIDWEST CAPITAL INVESTMENTS, LLC'S
## MOTION TO DISMISS ADVERSARY COMPLAINT

Midwest Capital Investments, LLC, an Illinois limited liability company, by its attorneys,

Ruff, Weidenaar & Reidy, Ltd., pursuant to Federal rule of Bankruptcy Procedure 7012 and

Federal Rule of Civil Procedure 12(b)(6) and for its Motion to Dismiss Adversary Complaint

states as follows:

### COUNT I

1.     On April 13, 2007, debtors Keith and Dawn Smith (the "Debtors") filed both their

Chapter 13 Bankruptcy petition and adversary complaint in this matter.

2.     In Count I of their two count Adversary Complaint, Debtors assert that the

transfer of a tax deed to an entity named "S.I.-P.I., LLC" was ineffective to convey title because

an entity registered under the name "S.I.-P.I., LLC" did not exist.  Instead, title was *intended* to

be conveyed to the entity "SIPI, LLC."

191155

3

**APPENDIX D-2**
**R.8009(b)(6)**

3.    Where the parties intend to pass a present estate to an existent grantee but under a name other than the correct one, such a conveyance passes title to the intended grantee. In re Application of the County Treasurer and Ex Officio County Collector of Cook County, 327 Ill.App.3d 622, 763 N.E.2d 900 (Ill App 2002); Chance v. Kimbrell, 376 Ill. 615, 621, 35 N.E.2d 48 (1941). The misnomer on the certificate was inadvertent; Talon intended to transfer the certificate to similarly named entity "SIPI, LLC." Therefore, the assignment should be given full effect as a proper conveyance. Christ Church v. Christian Church, 193 Ill. 144, 150, 61 N.E. 1119 (1901).

4.    As such, the Debtors' fail to state a claim upon which relief may be granted and their Adversary Complaint must be dismissed.

## COUNT II

5.    In Count II of their Adversary Complaint, Debtors also seek to set aside the transfer of their property as a fraudulent conveyance pursuant to Section 548 of the Bankruptcy Code (11 U.S.C. 548).

6.    Section 548 requires that a transfer must have occurred within two years prior to the filing of the debtors' bankruptcy petition. 11 U.S.C. 548.

7.    In Illinois, the transfer of property that is the subject of tax deed proceedings occurs upon the expiration of the period of redemption from the tax sale. In re McKeever, 132 BR 996 (Bankr.N.D.Ill. 1991); In re Butler, 171 BR 321 (Bankr.N.D. Ill. 1994); and In re Moureau, 147 BR 441 (Bankr.N.D. Ill. 1991).

8.    In this case, the period of redemption expired on November 1, 2004. Therefore, in compliance with Illinois law, the date of the property transfer was November 1, 2004. The Debtors did not file their Bankruptcy Petition until April 13, 2007.

9.    Since the transfer occurred more than two years before Debtors filed their

Petition, their claim falls outside of the timeframe mandated by the Bankruptcy Code.

10.    Accordingly, Debtors' Adversary Complaint is insufficient at law and sets forth no cause of action upon which relief may be granted.

WHEREFORE, the Defendant, Midwest Capital Investments, LLC, hereby moves this Court to dismiss Debtors' Adversary Complaint with prejudice and for such other relief as this Court deems just and equitable.

Respectfully submitted,
Midwest Capital Investments, LLC, an Illinois
limited liability company,

By: s/Edward P. Freud
      One of its attorneys

Edward P. Freud
Ruff, Weidenaar & Reidy, Ltd.
222 North LaSalle Street
Suite 700
Chicago, Illinois  60601
(312) 263-3890

191155

5

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| Keith Smith and Dawn Smith, | ) | Case No. 07 B 6631 |
| Debtors | ) | |
| | ) | |
| ------------------------------------------------------------) | | Chapter 13 |
| Keith Smith and Dawn Smith | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Adversary No. 07 A 00239 |
| | ) | |
| FIRST AMERICAN TITLE INSURANCE CO. | ) | |
| (d/b/a The Talon Group), | ) | |
| SIPI, LLC, and | ) | |
| MIDWEST CAPITAL INVESTMENTS, LLC | ) | |
| | ) | |
| Defendants. | ) | |

PLAINTIFFS' RESPONSE TO RULE 12(b)(6) MOTION TO DISMISS
7001 (1),(2) AND (9) F.R.BANKR.P. ADVERSARY COMPLAINT
TO AVOID FRAUDULENT CONVEYANCE
AND
RECOVER TITLE TO REAL ESTATE AND/OR FOR OTHER RELIEF

NOW COME the Plaintiffs-Debtors by and through their attorney, ARTHUR G. JAROS,

JR., and submit this memorandum in opposition to the Motions to Dismiss filed by the remaining

Defendants SIPI, LLC and Midwest Capital Investments, LLC ("Midwest").

Nature of the Action and Undisputed Facts

This is primarily[1] an action pursuant to 11 U.S.C. Section 548 to set aside transfer(s) for

less than full and adequate consideration at a time when the Debtors and each of them were

insolvent.

-------------------------------------

[1]Counts III and IV

**APPENDIX E**
**R.8009(b)(6)**

Plaintiffs seek to recover ownership of their primary residence subsequent to the pre-petition issuance and recording of a tax deed.

This civil action was commenced within two years of the issuance of that tax deed but more than two years after the expiration of the redemption period under the Illinois property tax code with respect to a tax sale conducted for non-payment of real estate taxes.

<u>Nature of the Defendants' Motions</u>

11 U.S.C. Section 548(a)(1) provides that 'the trustee may avoid any transfer ... of an interest of the debtor in property .... that was made ... on or within two years before the date of the filing of the petition if the debtor voluntarily or involuntarily ... (B)(i) received less than reasonably equivalent value in exchange for such transfer ... and (ii)(I) ... became insolvent as a result of such transfer ..."

The Adversary Complaint alleges in ¶¶13-16 that Defendant SIPI was the purchaser at the tax sale and ultimately the grantee in the tax deed issued April 15, 2005.  This civil action was commenced on April 13, 2007.

SIPI and its purported transferee by subsequent warranty deed, Midwest, now each move under F.R.Civ.P. 12(b)(6) to dismiss, alleging that this civil action was not commenced within the two year period specified by 11 U.S.C. §548 as referenced above.  Movants rely upon <u>McKeever</u>, 132 B.R. 996 (Bankr. N.D. Illinois, 1991, Katz, B. J.) and its progeny arising within this and other bankruptcy districts within the State of Illinois:

<u>Moureau</u>, 147 B.R. 441 (Bankr. N.D. Illinois, 1992 Wedoff, B.J.)

<u>Butler</u>, 171 B.R. 321 (Bankr N.D. Ill.. 1994, Schmetterer, B.J.)

See also:

Bequette, 184 B.R. 327 (Bankr. S.D. Ill. 1995, Meyers, B.J.)

Bates, 270 B.R. 455 (Bankr. N.D. Ill., 2001, Wedoff, B.J.)

Murray, 276 B.R. 869 (Bankr. N.D. Ill., 2002, Squires, B.J.)

Smith v Phoenix Bond & Indemnity, 288 B.R. 793 (N.D. Ill. 2002, Moran, D.J.)

S.I. Securities v. Dabal, 2003 WL 21785625 (N.D. Ill. 2003, Andersen, D.J.)

Of these cases, only three pertained to an avoidance action under Section 548 (McKeever;

Moureau and Butler (with the latter two cases adopting McKeever without extensive review of

McKeever's reasoning) . The remaining cases pertain to (a) the interplay of Section 108 and the

ability of a Chapter 13 Plan to cure unpaid taxes beyond the Section 108 period and/or (b) the

operation of the Automatic Stay (whether in Chapter 7 or Chapter 13) in the context of staying

action by a tax sale purchaser to proceed with the state court process leading to issuance of a tax

deed and the grantee's recording thereof.


## Plaintiffs-Respondents' Position

McKeever, with the few exceptions noted below, correctly analyzed the tax sale

procedure provided by state law but sorely  misapprehended and misapplied the controlling text

of the U.S. Bankruptcy Code.

Respondents here maintain that McKeever, although correctly decided in favor of the

Debtors,  contained erroneous dicta affecting statutory interpretation of the plain and controlling

text of the U.S. Bankruptcy Code and impairing the public policy underlying 11 U.S.C. §548.

The fundamental errors of law contained in McKeever and additional errors contained its

progeny have recently been convincingly and exhaustively noted by Bankruptcy Judge Thomas

Perkins' opinion in <u>McKinney</u>, 341 B.R. 892 (C.D. Illinois 2006).

Underlying Policy

As quoted above, §548 permits a trustee (but not a Chapter 7 Debtor), to set aside or obtain other relief for transfers for less than full and adequate consideration if the conditions specified in that section are satisfied.

Under Chapter 13, Debtors who, as here, are in possession of the Estate, possess the avoiding powers of a trustee in bankruptcy (see legislative history to 11 U.S.C. §323; <u>Einoder</u>, 55 B.R. 319 (Bankr. N.D. Ill. 1985); <u>Robinson</u>, 80 B.R. 455 (Bankr. N.D. Ill. 1987)).

However, as Debtors-in-Possession, the Debtors may not use a proceeding under §548 for their <u>sole</u> benefit but rather may use such an avoidance proceeding only if creditors holding unsecured claims would be substantially benefitted from a successful avoidance action.

Here, Debtors' Chapter 13 Plan and schedules reveal that if the instant adversary proceeding is successful, General Unsecured Claims ("GUSC") will be paid in full (100%). In contrast, if the debtors' effort under Section 548 is unsuccessful, GUSC will be paid significantly less: nominally 35% (the guaranteed minimum as set forth in the Plan) or *de facto* 48%[2]

Because the plain policy underlying Section 548 is to protect and enhance the position of general unsecured creditors, any ambiguity in Section 548 should be construed liberally in favor of recovery for the Estate. Here, because the real estate in question had been inherited (Complaint, ¶12) and was free and clear, the equities and Title 11 policy both lie against permitting the tax purchaser

---

[2]This percentage has been determined by adding 36 monthly escrow payments of $300 each per Paragraph G Special Terms (net of a 5% Trustee's fee) to the $27,292 in net plan payments ($27,292) shown on line H(3) of the Modified Plan for a revised total payment to GUSC of $37,552 ((300 x 36 x 95%)+27292) available against an estimated $78,411 in GUSC (Modified Plan, line H(4)(a)).

–4–

and/or its purported assignee Midwest from retaining a gross windfall on account of Debtors'
temporary and now resolved financial incapacity and in favor of the Estate on behalf of GUS
claimants.  (Wellman v. Wellman, 933 F.2d 215 at 218 (4th Cir.) (holding that there is no recovery
for the benefit of the estate "when the result is to benefit *only* the debtor rather than the estate"
(quoting 4 Collier on Bankruptcy, ¶550.02 n.3 (15th ed. 1979))); Join-In Int'l (U.S.A.) Ltd. v. New
York Wholesale Distributors Corp., 56 B.R. 555 at 561 (Bankr. S.D.N.Y 1986) ("[I]f the recovery
of the alleged fraudulent conveyance will *solely* benefit the debtor it will not be permitted to
maintain the proceeding."); 5 Collier on Bankruptcy  ¶550.02 [2] (15th ed. Rev. 2004) ("thus, in
general, the trustee or debtor in possession may not recover the property transferred or its value when
the result is to benefit *only* the debtor rather than the estate.").


### Review of Illinois State Law

Bankruptcy Judge Katz in McKeever correctly analyzed the Illinois law of real estate tax sale
as containing multiple transfers:

(1) "The first **transfer** occurred when the tax lien attached to the property and the debtors'
interest became subject to such lien." 132 B.R. at 1008

(2) "[A] second **transfer** occurred when the property was sold at annual tax sale. (*ibid.*)
This tax sale gave rise to a "new set of rights" as set forth in McKeever's footnote 5. *** "Although
the debtors retained title to the real estate as part of their right to redeem from the tax sale, upon
expiration of the redemption period, the tax sale purchaser could move to divest them of title by
proceeding to obtain a tax deed.  Clearly these rights and conditions arose separately from the prior
tax lien transfer [#1 immediately above]  and constituted a **new transfer** within the meaning of

§101(54) and §548." (132 B.R. at 1009)

(3) "The expiration of the redemption period and the resulting *right* [not the exercise of that right] to proceed to tax deed, therefore, fundamentally alerted the rights of the parties. The debtors were involuntarily divested of their remaining ownership rights[3] at that time, resulting in a transfer within the meaning of §101(54) and §548." (132 B.R. at 1009)  "Prior to that time [the expiration of the redemption period], the tax sale purchaser held only certain lien rights ... whereas after that time the tax sale purchaser held equitable title[4] subject only to the formalities of perfection.  This fundamental shift constitutes **a transfer** of the property of the debtors to the tax sale purchaser ..." (132 B.R. at 1010)

(4) "If an application for tax deed is timely filed, equitable title[4] to the property **passes** to the tax sale purchaser subject to his obligation to prove-up his case... " (132 B.R. at 1010).

(5) "The tax deed itself represents **yet another transfer** which occurred within one year[5] of the filing of the petition." (132 B.R. at 1009; accord, Moureau, 147 B.R. at 442, point 4, and Butler, 171 B.R. at 325, point 4)  The Court continued to note that the tax sale purchaser "receive[s] legal

---

[3]This appears wholly and inexplicably contradictory to the court's statement made just a sentence earlier: "Until such exercise [the exercise of the right to obtain to actually obtain the tax deed following expiration of the redemption period], the Certificate of Purchase does not transfer any ownership interest in the property and legal title remains with the debtors. (132 B.R. also at 1009).

[4]The McKeever court appeared to make inconsistent statements (compare transfer #3 with transfer #4) as to when equitable title, in his view, passes. Per City of Chicago v. City Realty Exchange discussed in the text, *infra*, neither view is consistent with the pronouncement of Illinois courts as to when equitable title passes.

[5]P.L. 109-8 changed the Section 548 look back/limitations period from one year to two years, effective for cases, as here, commenced under title 11 more than 1 year after the April 20, 2005 date of enactment. (see, Section 1406(b)(2) of P.L. 109-8).

title via tax deed," but that such legal title was defeasible if the grantee in that deed fails "to properly record that deed within one year of the expiration of the redemption period. Unless the tax deed is recorded, it will become null and void by operation of law". (132 B.R. at 1010)

The court was surely correct in stating that legal title did not pass until the occurrence of transfer #5 identified by the court. The court was also surely correct in recognizing that "record title" did not pass under the recording of the tax deed. However, in stating in inconsistent fashion without citation to any authority that equitable title passed as "transfer #3" and/or "transfer #4" (hence the inconsistency), the court failed to consider that the right of possession–which invariably follows equitable title–does not pass at either alleged transfer #3 or #4! In fact, the right of possession is governed by 35 ILCS 200/22-40(c) which provides that the defaulting property owner does not lose his right of possession until there is a "tax deed grantee"

The first fundamental error of the McKeever court's analysis is to have asserted without citation to authority and through an overlooking of possessory rights that equitable title passes either upon expiration of the redemption period or upon the making of an application for tax deed thereafter. Illinois law says that equitable title does not so pass. Quite to the contrary, Illinois courts hold: "A certificate of purchase for delinquent taxes is a species of personal property, assignable by indorsement; but until expiration of the period of redemption **and _issuance_ of the tax deed based on it, no interest, equitable or legal is acquired on the land described in the certificate**. Wells v. Glos, 277 Ill. 516, 115 N.E. 658." (City of Chicago v. City Realty Exchange, Inc., 127 Ill.App.2d 185 at 190 (First District 1970)). Oddly, other portions of this case were expressly referenced by the McKeever court (132 B.R. at 1006) but this key statement of the Illinois court was overlooked in the discussion of Illinois law at 132 B.R. 1005-1007.

–7–

Bankruptcy Judge Perkins in <u>McKinney</u> provides the necessary corrective in the bankruptcy context to the <u>McKeever</u> court's error of law:

> It is the tax deed alone that conveys title the property and gives the tax deed grantee the right to possession (35 ILCS 200/22-40(c)). Until the tax deed is *issued*, title, the right to possession and all other incidents of ownership remain with the debtor. Moreover, unless the tax buyer obtains the records the tax deed within one year after the time for redemption expires, his rights become "absolutely void." (35 ILCS 200/22-85). **These provisions refute the notion that the debtor's interest is lost automatically when the redemption period expires postpetition.** (341 B.R. at 897, 898)

Judge Perkins plainly added the word "post-petition" because of the context of that case but the very same reasoning, based upon Illinois law, also applies where the redemption period expires pre-petition. This had been made clear by Judge Perkins a short time earlier in his opinion:

> All of the incidents of ownership remain vested in the debtor including title, the right to exclusive possession, the right to income, the right to encumber and the right to sell. The debtor's interest is subject to divestment only upon the occurrence of certain future contingencies including a failure to redeem by the debtor or any lienholder, compliance by the tax buyer with all statutory requirements, **and issuance of a tax deed by the court.**" (341 B.R. at 897).

But, having identified these five events of transfer, Judge Katz in <u>McKeever</u> then reasoned, as already noted, that "the debtors were involuntarily divested of their remaining ownership rights[6]"at the time of the transfer #3 above (expiration of the redemption period), "resulting in a transfer within the meaning of §101(54) and §548."    (*idib.*) Similarly, "[t]his fundamental shift constituted a transfer of the property of the debtor to the tax sale purchaser which occurred within one year of the filing of the petition." (132 B.R. at 1010). The progeny of <u>McKeever</u> assumed, with some warrant based upon dicta as explained below, that Judge Katz had reasoned--after having identified one of the five transfers (namely transfer #3) as "a" (not "the") transfer under Sections

---

[6]As just explained above, this statement was simply not an accurate statement of Illinois law.

101(54) and Section 548–that neither transfer #4 nor transfer #5 could be additional transfers for purposes of Sections 101(54) and Section 548.

But the McKeever court did not so *hold* because, on the facts of McKeever, it was not necessary for him to reach that issue.  To wit, the debtors in McKeever, who were prosecuting the avoidance action,[7] argued that a Section 548 transfer occurred *either* upon issuance of the tax deed on 9/9/88 or upon expiration of the redemption period on 8/10/88. (132 B.R. at 1008).  The tax sale purchaser-defendant argued that "the" transfer occurred much earlier "when the judgment of sale was entered against the property in favor of the local government" such that the subsequent tax sale and tax deed were ancillary to and part of the "judgment of sale transfer." (*ibid.*).  At this point in its opinion, the McKeever court correctly rejected the defendant's argument of "unitary transfer" by stating: "this argument fails to recognize that under the Illinois tax sale provisions there are a *series of transfers* which may occur and that the tax sale purchaser receives certain ownership-type rights which are separate and distinct from the tax lien rights previously held by the local government." 132 B.R. at 1008.

The McKeever court then concluded that transfer #3 which had occurred on 8/10/88–namely, expiration of the redemption period–was *a* Section 548 transfer and fell within Section 548's then one year (now two year) lookback or limitations period (because the bankruptcy petition date was 8/10/89) such that the plaintiff's avoidance proceeding was timely and not subject to dismissal. Therefore, it was unnecessary for the McKeever court to determine whether transfers #4 and #5 were also Section 548 transfers.  Similarly, in Moureau and Butler, the other two cases relied upon by

---

[7]McKeever was a Chapter 7 proceeding where the Debtors, not the Trustee, were allowed to prosecute the avoidance against but only to the extent of their homestead exemptions (132 B.R. at 1004).

movants, the expiration of the redemption period fell within the lookback/limitations period of Section 548(a) and it was not necessary to determine whether transfers #4 and #5 were also Section 548 transfers. Therefore, none of the three cases relied upon by the movants actually determined or held that the issuance of a tax deed is NOT an avoidable transfer under Section 548.

However,   The <u>McKeever</u> court, in dicta, then went on to state "within the meaning of Section 548(d), ***the*** [not "a"] transfer to be avoided here occurred upon the expiration of the redemption period." 132 B.R. at 1010.   In so stating, the <u>McKeever</u> court engaged in a shift of thinking from "***a***" Section 548 transfer to "***the***" Section 548(d) transfer to be avoided, and thereby embraced the concept of "unitary transfer" which he had rejected just a short time earlier within the same opinion.

By so doing, the <u>McKeever</u> court not only acted inconsistently but misread or overlooked the precise terminology Section 548(d)(1) which states as follows:

> For the purposes of this section, ***a*** [not "the] transfer is made when such transfer is so perfected that bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer is made immediately before the date of the filing of the petition.

Two observations are in order.

First, both Section 548(d)(1) and 548(a) are phrased in terms of "a" transfer, not "the" transfer. This is consistent with the broad definition of transfer contained in Section 101(54) which defines the term "transfer" to include "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with (i) property; or (ii) an interest in property." Possessory rights are an "interest in property." Under Illinois law, the rights are not disposed of or parted with until after the tax deed is issued such that there is a grantee in the deed.   Thus, any

-10-

Section 101(54) transfer is within the scope of Section 548 and each of the five transfers identified by the McKeever court can be subjected to attack under Section 548, assuming the conditions for attack including timeliness of the bankruptcy petition and of the adversary complaint are satisfied. To wit, Section 548 expressly states: "The trustee may avoid *__any__* [not "the"] transfer ..." Here, the McKeever court identified five transfers.  The Code (Section 548(a)) plainly states that "*__any__*" of these five transfers is subject to avoidance!  It was error for the McKeever court to assume, at this point in his opinion,  that there could only one transfer  under Section 548.

Second, Section 548(d)(1) has the express function of extending the one or (now) two year lookback or limitations period of Section 548(a) by not counting transfers which had actually been made until the later time at which they are perfected. "Perfection," as set forth within the text of Section 548(d)(1) itself,  means that the actual transfer is or has become of such a legal quality that a bona fide purchaser *__cannot__* acquire (i.e. impossible to acquire)  an interest in the property transferred that is superior to the interest in such property of the transferee.

It will be seen that it is not even necessary to refer to Section 548(d)(1) if an unperfected transfer has occurred within the lookback period!  It is only necessary to consider Section 548(d)(1) if an unperfected transfer occurred beyond the lookback period so as to bar a Section 548 avoidance action unless perfection occurred within the lookback period.

The simplest case to illumine this point is that of issuance of a tax deed which, as noted above,  transfers both legal and equitable title and the right of possession.  Until recorded, the tax deed constitutes an unperfected transfer because if it is not timely recorded it becomes null and void and a bona fide purchaser from the debtor can, in such event, obtain an interest in the property superior to the grantee in the issued tax deed.

If such an unrecorded deed were issued within the lookback period, under the text of Section 548(d)(1), it would be subject to timely avoidance attack under Section 548 (with the last clause of Section 548(d) expressly deeming, for Section 548(a) purposes, that unperfected transfer to have been made immediately before the date of the filing of the petition).

If such a deed had been issued beyond the lookback period, then a Section 548 attack would be untimely if the recording likewise occurred beyond the lookback period but, on the other hand, timely if the recording occurred within the lookback period.

In the instant case, both the issuance of the deed (on April 15, 2007) and its subsequent recording (on April 19, 2005) occurred with the two year lookback period from the April 13, 2007 petition date. As such, the Rule 12(b)(6) motions must be denied.

Unfortunately, the McKeever court misread Section 548(d)(1) and ended up standing it on its head! To wit, the McKeever court recognized that the act of recording the tax deed constituted its perfection, stating : "Upon perfection, the effective date of the deed will relate back to the date on which the redemption period expired. The transfer would not be perfected and would not be deemed to have occurred until these procedures were completed." (132 B.R. at 1010) So far so good in terms of the need for perfection[8], keeping in mind, however, that the effective date of the deed is not the date perfection occurred and that such date–the date perfection occurred-- is the relevant date under Section 548(d)(1). The McKeever court then drew two conclusions, the first of which was also correct: "The possibility of a gap in perfection where the tax sale purchaser fails to properly apply for a tax deed, or where the tax deed is not perfected by record, supports the conclusion that

---

[8]The legal basis and legal significance for the court's claim that the effective date of the deed relates back to the expiration date of the redemption period are unexplained.

-12-

the process consists of more than one transfer, and that a properly perfected tax deed does not relate back to the tax sale..." (Again, so far so good, especially keeping in mind his key statement, totally consistent with Section 548(d)(1), that "the transfer . would not be deemed to have occurred until these procedures were completed.") But, then in a complete contradiction and non-sequitur, the McKeever court proceeded to draw its second conclusion, namely that a "properly perfected tax deed "rather" relates back

> to the date of expiration of the redemption period. Thus, within the meaning of Section 548(d), the transfer to be avoided here occurred upon the expiration of the redemption period. (132 B.R. at 1010)

No! Precisely to the contrary, Section 548(d)(1) provides that the transfer under Section 548(a) is deemed <u>not</u> to have occurred <u>until the time of perfection</u>. There is no relation back doctrine found in the text of Section 548(d)(1). The purpose of Section 548(d) is to grant additional, not less, time to the Estate beyond the one or, now, two year period in the case of initially unperfected transfers and to measure the running of that one or two year period from the subsequent date of perfection. The key word in Section 548(d) is the word "when:" "A transfer (for Section 548(a) purposes) is made **when** such transfer is so perfected." That subsection, therefore, merely defines the *time* of transfer for purposes of Section 548(a), not *what* constitutes a transfer which is the role of Section 101(54). Finally, the McKeever court measured the running of the period from the date of the unperfected transfer #3 instead of from the date of its perfection as required by Section 548(d)!

Conclusion

Under Illinois law, the Debtors suffered an involuntary transfer of legal and equitable title to their home upon the issuance of the tax deed. Such transfer was perfected by the recording a few days later of that deed. For purposes of Section 548(a), the time of the transfer was deemed by

-13-

Section 548(d) to be the date of recording.    This adversary proceeding was therefore timely commenced within two years of the deemed date of transfer determined under Section 548(d)(1), namely the date of recording of the deed.

The fact that the expiration of the redemption period affected Debtors' rights does not justify the assumption that no subsequent transfers within the meaning of the Bankruptcy Code could be made.    Moreover, such expiration, even if considered to be "a transfer" or even "the transfer," is not perfected until the subsequent recording of the tax deed. Section 548(d)(1)'s plain text requires that the date of perfection be deemed to be the date of transfer for purposes of Section 548(a); therefore, the Section 548(a)  transfer date of any rights transferred on account of the expiration of the redemption period is not the expiration date but the date of recording of the tax deed, because that and only that is the date of perfection.

As the McKeever court stated later in its opinion, Section 548's focus "is to establish a procedure for recovering and bringing back into the estate property which at the time of the filing of the petition is not property of the estate and is not subject to the automatic stay" (132 B.R. 996 at 1011, citing to Belisle v. Plunkett, 877 F.2d 512 at 516 (7th Cir. 1989)).    Once property is so recovered, the adversary defendants suffering the avoided transfer become secured creditors (11 U.S.C. Section 550(e)(1)) whose claims fall within Chapter 13 Plan provisions for payment, cure and in certain cases modification of lien rights pursuant to Section 1322(b)(2) and (3).  These provisions, in the nature of reorganization, override Section 108 which is intended to assist Chapter 7 trustees (see the excellent, extended  explanation in McKinney, 341 B.R. at 898-902)

<u>Counts I and II</u>

Paragraph 9 of SIPI's motion seeks to dismiss Count II on the basis that the warranty deed

it, as assignee in the tax deed, issued to Midwest contained a misnomer.  SIPI relies upon "35 ILCS 5/22-40."  The undersigned counsel is unable to locate such a citation and believes it to be in error and is unable to respond without a correct reference.

Midwest's motion alleges that the tax deed contained a mere misnomer of the named grantee. That motion, in paragraph 2, further alleges that "title was **intended** to be conveyed to the entity "SIPI, LLC."  Such allegation appears to be an allegation of fact not suitable for a Rule 12(b)(6) motion which tests the legal sufficiency of the complaint.  Moreover, no showing is made by the movant that an unreformed error in an instrument, assuming *arguendo* the presence of a misnomer, is effective to transfer title until such time that the instrument is reformed.


## PRAYER

Wherefore, Plaintiffs-Debtors pray that this Honorable Court deny the Defendants' Rule 12(b)(6) motions to dismiss and permit the avoidance action for the benefit of general unsecured creditors to proceed.

KEITH SMITH and DAWN SMITH

By:    ARTHUR G. JAROS, JR.,
         their counsel


/s/ Arthur G. Jaros, Jr.


Arthur G. Jaros, Jr.
1200 Harger Road - Suite #830
Oak Brook, Illinois  60523
(630) 574-0525