DOCKET NO: 07 cv 06534

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 07 B 6631 |
| | ) | The Hon. Bruce W. Black, B.J. |
| KEITH SMITH and DAWN SMITH, Debtors | ) | |
| ------------------------------------------------------------) | | Appeal from: |
| KEITH SMITH and DAWN SMITH, | ) | |
| Plaintiffs-Appellants | ) | Adversary No.  07 A 00239 |
| v. | ) | to: |
| SIPI, LLC, and | ) | The Honorable Ronald A. Guzman, |
| MIDWEST CAPITAL INVESTMENTS, LLC, | ) | District Judge |
| Defendants-Appellees | ) | |

APPELLANTS' F.R.BANKR. P. 8009(a)(3) REPLY BRIEF

March 11, 2008

Arthur G. Jaros, Jr.
1200 Harger Road, #830
Oak Brook, IL 60523
(630) 574-0525

ARGUMENT IN REPLY

The parties are agreed that Plaintiffs seek to recover ownership of their primary residence in the face of the pre-petition issuance and recording of a tax deed within two years of the commencement of their Chapter 13 bankruptcy proceeding and of the instant adversary proceeding where the period of redemption expired beyond such two year period.

As explained below, the Appellee-Defendants, in their effort to retain the windfall of acquiring, at tax sale, inherited property:

1) engage in begging the question;

2) mischaracterize bankruptcy case dicta as constituting precedent;

3) make admissions as to the correctness of Appellants' legal analysis;

4) fail to address the text of 11 U.S.C. Section 548(a) and (d)(1) and the heart of Appellants' argument; and instead

5) attribute to Plaintiffs-Appellants arguments not, in fact, made by them.

A) PRECEDENT VERSUS DICTA

At page 29 of their opening Brief, Plaintiffs-Appellants observed that this is the first bankruptcy case involving Illinois real estate tax sale law and procedure where the period of redemption expired outside the two year period of 11 U.S.C. 548 but the issuance and recording of the tax deed occurred within the two year period.   Thus, this is truly a case of first impression.

Notwithstanding this fact, SIPI's Brief at p. 5 inaccurately alleges: "Plaintiff's brief acknowledges that their position is contrary to existing established precedent."    Appellants' Brief took great pains to demonstrate that neither Judge Katz in McKeever nor any of the "progeny" of McKeever needed to reach or even actually reached the issue presented by this case (Appellants' Brief, p. 7, 8, 16, 17) and so none of them constituted a precedent.

Moreover, even if the issue presented by the fact pattern in this case had been presented in a previous case decided by a Bankruptcy Judge of the Northern District Illinois, such a

decision has no *stare decisis* effect upon this Court (<u>In Re Rosteck</u>, 99 B.R. 400 (N.D.Illinois 1989)).

Essentially, this Honorable Court in deciding the case, taking into account the text of the Bankruptcy Code and policy considerations (Appellants' Brief, p. 9-10) which have gone unaddressed by Appellees' Briefs, will likely end up siding either with (a) internally inconsistent dicta in <u>McKeever</u> which inadvertently distorted and misstated Illinois real estate tax law and procedure  or (b) more recent corrective dicta contained in <u>McKinney</u> (Appellants' Brief, pp. 13, 14) which faithfully reflects Illinois real estate tax law and procedure.

B)  MIDWEST CAPITAL'S BRIEF BEGS THE QUESTION

The Brief of Midwest Capital states at p.6:

Debtors make the inaccurate assertion that pursuant to Section 548, the time of transfer should be deemed to be the date of recording of the deed, instead of the date upon which the period of redemption expires.   On the contrary, the <u>McKeever</u> court clearly explained that any attempts by the prior owner to redeem the property after the redemption period expires would be in vain.

The so-called "assertion" of the Debtors is, of course, the issue to be decided and it is Debtor's conclusion, based upon extensive parsing of the Bankruptcy Code, review of Illinois statutory law and analysis of the <u>McKeever</u> opinion that, indeed, the recording of the tax deed does constitute an avoidable transfer under Section 548(a) and (d)(1).   Appellants' brief challenges the correctness of certain dicta contained in <u>McKeever</u> and it is no response from Midwest that <u>McKeever</u>'s dicta should now be blindly approved and followed.

C) APPELLEES PERPETUATE McKEEVER'S MISSTATEMENT OF ILLINOIS LAW

Midwest's Brief thrice at pages 5, 6 and 7 states that "Debtors lost all interest in the property" upon the expiration of the period of redemption.  Indeed, as pointed out at page 14 of Appellants'

-2-

Brief, this proposition of Illinois law has its origin in the statement contained in <u>McKeever</u> (a 1991 decision) that upon expiration of the period of redemption, "the debtors were involuntarily divested of their remaining ownership rights."   This language was, in turn, repeated in 1995 by <u>Bequette</u>: "Upon expiration of the redemption period, however, the owner loses all interest in the property ..."  (184 B.R. at 336).

A fundamental problem is that this language contained in <u>McKeever</u> and <u>Bequette</u> is plainly an incorrect statement of Illinois real estate tax law.   This error was addressed at pages 13-15 of Appellants' Brief including footnote 5, to wit, under Illinois law and notwithstanding the expiration of the redemption period:

    1) record title remains in the delinquent property owner;

    2) legal title remains in the delinquent property owner;

    3) equitable title remains in the delinquent property owner; and

    4) right of possession remains in the delinquent property owner (per 35 ILCS 200/22-40(c)).

Judge Perkins in <u>McKinney</u> (quoted at Appellants' Brief, pp. 13, 14) accurately wrote that the dicta in <u>McKeever</u> and <u>Bequette</u> purporting to describe Illinois real estate tax law was plainly erroneous.   That decision of Bankruptcy Judge Perkins in <u>McKinney</u>,  which held that a Chapter 13 Plan may be used to redeem delinquent property taxes, where the property taxes had been sold pre-petition but the period of redemption had not expired  pre-petition, has just been affirmed (<u>Salta Group v. McKinney</u>, 380 B.R 515 (C.D. Illinois 1/4/2008)).  The opinion of District Judge McDade observes: "Once the redemption period has expired and the tax purchaser has provided notice, the tax purchaser ***can eventually acquire*** an interest in the property from an Illinois court in the form of a tax deed"  (380 B.R. at 518, italics added).  This statement of the District Court is fully consistent with Appellants' analysis and a repudiation of the "loss-of-ownership-upon-expiration-of-redemption-period" dicta in the <u>McKeever</u> line of cases.

Appellees' Briefs make no response to this argument of Appellants (i.e., that the dicta in <u>McKeever</u> and <u>Bequette</u> is in error and ought not be perpetuated by this Honorable Court) but Midwest continues to blindly quote the prior dicta of two bankruptcy judges that simply and sadly misstate Illinois law.

D) APPELLEE SIPI ATTEMPTS TO WRONGFULLY POISON THE WELL

SIPI's Brief at p. 5 states:

Here the redemption period expired under Illinois law on November 1, 2004, while the Plaintiffs' Chapter 13 Petition was filed on April 13, 2007, more than two years later. In the interim, SIPI complied with Illinois law in all respects and perfected its tax deed. It proved up its tax deed petition, received an order for tax deed, obtained the tax deed and timely recorded it.   **Plaintiffs did nothing in the interim to protect themselves**, including, but not limited to, contesting the validity of the tax deed or seeking bankruptcy protection on a more timely basis. (emphasis added)

The import of the emphasized language is that the determination of when the two year period under Section 548 begins to run and what constitutes a transfer falling within that period–the issue in this case–should somehow be affected by Plaintiffs' inactivity.   The reasons for Plaintiffs' inactivity are not presently spread of record, with no evidentiary hearing having taken place.  One could speculate that Plaintiffs lacked the financial means to take action sooner than they did, perhaps based upon a change in employment and family income.

The 'bottom line' is that, as explained at Appellants' Brief, p. 9, 10,  Section 548 permits the Bankruptcy Estate (not the Debtors in their personal capacity) to avoid transfers for less than full and adequate consideration for a period looking back from the bankruptcy petition date  two full years during which two year period there is permitted to be a complete lack of activity by the Debtors.  Obviously, the Debtors' period of inactivity pre-dated even the expiration of the period of redemption, and went all the way back to non-payment of the real estate tax bills on their due date.   Inactivity by the Debtors is simply irrelevant to the issue presented by this case, which is: did the recording of the tax deed constitute a transfer avoidable under Section 548(a) and (d)(1) such that the lost equity in the transferred property, which constituted a windfall to the Defendants-Appellees, can be restored to the bankruptcy estate for the benefit of the Debtors'

creditors as quantified at page 9 of Appellants' Brief?

E) <u>**ANY**</u> TRANSFER WITHIN TWO YEARS OF THE PETITION DATE IS SUBJECT TO 11 U.S.C. SECTION 548 SCRUTINY

    1) Appellees' Failure to Address and Rebut Appellants' Statutory Interpretation

As articulated at pages 17-19 of Appellants' Brief, 11 U.S.C. Section 548(a) expressly provides that "ANY transfer" occurring within two years and otherwise meeting the requirements of that subsection may be avoided.   Appellants' Brief at pages 11 and 12 also noted Judge Katz' own identification within <u>McKeever</u> itself of various transfers occurring AFTER the expiration of the period of redemption, namely, an alleged transfer occurring upon the subsequent filing of the application for tax deed and yet another transfer occurring as a result of the issuance of the tax deed.  Appellants' Brief at page 12, 13, also noted that, under Illinois statute,  the right of possession transfers AFTER the expiration of the period of redemption.

Appellees' do not contest or refute that these transfers occurred within the statutory two year period yet are silent as to why ONLY a single alleged transfer–the particular transfer occurring at the expiration of the redemption period–can be the subject of Section 548 when that section expressly states that "ANY transfer" (not "THE transfer") is subject to Section 548's provisions.

Basically, the Appellees have made no response to the challenge to the legal reasoning contained in <u>McKeever</u> which impermissibly changed–mid-opinion–from the indefinite article "a" or "any" modifying the word "transfer" to the definite article "the" modifying the same word "transfer."

It being conceded that transfers did occur within two years of the Petition Date, no reason is supplied by the Appellees why those transfers cannot now be avoided.  Indeed, Midwest's Brief at p. 7,  admits: "In looking at the plain meaning of Section 548, it is clear that a transfer of property occurs when the prior owner's rights are extinguished."  Yet neither Appellee disproves the legal truth that equitable title, legal title, record title and right to possession all transferred

within two years of the Petition date.    Thus, it may be seen that Midwest, in substance, has admitted the timeliness of the instant avoidance action under Section 548.

Instead of responding to the substance of Appellants' argument, Midwest's Brief at page 5 accuses the Debtors-Appellants of "ignor[ing] the process by which to determine when property is transferred."    Quite to the contrary, it is the Appellees who disregard the multiple transfers identified by Judge Katz, and who disregard actual Illinois case and statutory law as to when equitable and legal title and the right of possession actually transfer.

SIPI's Brief appears to recognize the challenge facing the Appellees to be able to explain why those transfers occurring subsequent to the expiration of the redemption period may not be subjected to avoidance under Section 548, precisely as Appellants seek to do.  SIPI's tack is to attempt to fudge or gloss the difficulty by writing at page 5 and 6 of its Brief:

> "... by the time the redemption period expired on November 1, 2004, SIPI had taken all steps necessary ***up until that time*** to extinguish Plaintiffs' rights in the property ..." (emphasis added)

But, of course, "taking all steps necessary up until that time to extinguish" is not the same as actually extinguishing!!    And, Illinois law–unaddressed by the Appellees--makes clear that the rights of the Debtors-Appellants were not actually extinguished until the issuance and recording of the tax deed.

2) SIPI's "Conditional Transfer" Argument Is Insufficient and Unsatisfactory

To defend its position that only "the" particular transfer (whatever it consisted of) said to have occurred at the time the redemption period expired--but not any other subsequent transfer-- can be attacked by a bankruptcy estate under Section 548(a), SIPI seizes upon the word "conditional" as found in 11 U.S.C. Section 101(54).   To wit, SIPI writes at page 6 of its Brief: "The key to this proposition is the definition of 'transfer' found in 11 U.S.C. 101(54), and the key word in that definition is 'conditional.'"

.

Plaintiffs disagree.  Section 101(54)(D) defines the word "transfer" to includes BOTH "absolute" and "conditional" modes of disposing of property.   Indeed, Judge Katz' opinion in <u>McKeever</u> found there to be multiple transfers.   Concluding that a "conditional transfer" occurs upon the expiration of the property tax redemption period does not permit one to draw the additional conclusion that an "absolute transfer" did not subsequently occur (as <u>McKeever</u> acknowledges is the case).   And, if such a subsequent transfer occurs, Section 548(d)(1) permits "any transfer" to become the subject of a  Section 548 avoidance action (assuming the other requirements of Section 548 are met).   The fallacy of Appellees' position is in assuming, sub silento, that only the first, conditional transfer may be subjected to attack under Section 548. But the text of Section 548 says that "any transfer" is subject to attack.   Moreover, Section 548(d)(1) specifically defines--for the narrow purpose of Section 548(a)--when a transfer–whether absolute or conditional–under the general definition of Section 101 is deemed to have occurred.  As noted, a transfer occurs in the context of Illinois real estate tax law when a tax deed is timely issued and timely recorded.  Thus, the "key word" in the statutory analysis under Section 548 is not the word "conditional."

F)   A SECTION 548 TRANSFER OCCURS WHEN THERE IS "SUFFICIENT PERFECTION" AS DEFINED IN SECTION 584(d)(1)

Paragraph (1) of Section 548(d) reads:

> For the purposes of this section, a transfer is made <u>when</u> such transfer is  ***so perfected*** that a bona fide purchaser  from the debtor against whom applicable law permits such transfer to be perfected <u>cannot acquire</u> an interest in the property transferred that is superior to the interest in such property of the transferee, but  ... (emphases added)

The emphasized term "so perfected" implies that there are different degrees or stages to "perfection."

Indeed, SIPI admits this to be the case.    Midwest's Brief at page 8 asserts: "Debtors

confuse the effect of the Section by misinterpreting the meaning of the word "perfected." Debtors misconstrue the word "perfected" to mean the recording of a deed." Midwest implies that perfection occurs when the period of expiration expires. But SIPI's Brief is clear in admitting to different stages of perfection: "At this point [upon expiration of the redemption period], the transfer to SIPI was ***perfected*** because Plaintiffs could not have conveyed an interest in the property to BFP after November 1, 2004, greater than SIPI's ***except for*** the conditions precedent all under SIPI's control." Yet SIPI's Brief at page 5 also states: "In the interim, SIPI complied with Illinois law in all respects and ***perfected*** its tax deed."

Straightforward statutory analysis reveals that the purpose of Section 548(d)(1) is to define with precision the moment at which a transfer under Section 101(54) is deemed to have occurred *for purposes of Section 548(a)*. The import of Section 548(d)(1) is to postpone the time of transfer for Section 548(a) purposes until it is sufficiently perfected. Indeed, the last clause of Section 548(d)(1) reading "but if such transfer is not so perfected before the commencement of the case, such transfer is made immediately before the date of the filing of the petition" makes clear that both unperfected transfers and insufficiently perfected transfers are deemed made immediately before the Bankruptcy Petition Date so as to clearly state that such transfers are considered falling within the two year window and thus able to be challenged under Section 548(a).

Thus, the only question becomes: "at what point in time is there sufficient perfection" of a tax purchaser's rights under Illinois law?" Section 548(d)(1) states that the sufficiency of perfection is at that point in time "***when***" a bona fide purchaser receiving a deed from the delinquent property owner "***cannot*** acquire an interest in the property transferred that is superior to the interest ... of the transferee [tax purchaser]" (emphasis added). And at what point in time does it become impossible for such a third party purchaser to acquire a superior interest? Under Illinois law, only when the tax purchaser timely procures and records his tax deed. Until the recording of the tax deed within the strict time frame prescribed by Illinois law, it is *possible* for a third party purchaser for value and acting in good faith (a "bona fide purchaser") who receives and records a deed from the Debtor prior to the issuance and recording of the tax purchaser's tax deed to end up superior to the tax purchaser, where, for whatever reason, the tax

purchaser fails to timely obtain and/or timely perfect (through recording) its tax deed.    This is so, under Illinois law, even though the bona fide purchaser has either actual or constructive notice of the real estate tax delinquency proceeding.

(However, in response to the argument by analogy set forth at pages 23 and 24 of Appellants' Brief, SIPI responds at page 7 of its brief as follows:

"Finally, we note Plaintiffs' argument about a contest between a tax purchaser and third party BFP in their brief. The argument goes no place because the party Plaintiffs describe as a BFP is not a BFP at all. It is an elementary legal principle that a BFP takes without knowledge of a prior interest[1]. Plaintiffs' example

_____

[1]This is not strictly accurate.  A subsequent purchaser for value can be acting in good faith if he has *constructive* notice or perhaps even limited knowledge of the possibility of a prior sale so long as he lacks actual knowledge that the prior purchaser actually received a deed that has gone unrecorded.   For example, Indiana's statute reads: "A conveyance ... takes priority according to the time of its filing.   The conveyance ... is fraudulent and void as against any subsequent purchaser ... in good faith and for a valuable consideration if the purchaser's ... deed ... is first recorded."  IC 32-21-4-1(b).   Thus, if a subsequent purchaser lacked actual knowledge of a prior unrecorded deed (even if he was charged with constructive notice), such subsequent purchaser for value and acting with personal good faith would prevail over the prior unrecorded transferee under the literal terms of such a statute.

Accordingly, it may be seen that "good faith" turns on the degree of actual knowledge but does not turn on constructive notice.

Confirming this generalized definition of "bona fide purchaser for value" is In re Gurs, 27 B.R. 163 at 165 (B.A.P. 9th Cir 1983).   As noted there, the presence of constructive notice does not eliminate bona fide purchaser for value status but the presence of such notice may well be sufficient (such as in "notice" and "race-notice" jurisdictions) to afford superiority to the prior unrecorded transferee–a result opposite that pertaining in "pure race" jurisdictions used by the

described Buyer B as "a bona fide purchaser for value, who has knowledge that
Seller had contracted to sell the property to Buyer A". Thus, their argument falls
of its own weight. There is no race to the Recorder's office because B's deed is
subject to attack, to say nothing of a fraud claim that Seller would be subject to."
What SIPI failed to consider was that the analogy was specifically said to be applicable to a "pure race" jurisdiction. (see, <u>Land Transfer and Finance</u>, Axelrod, Berger, Johnstone (Little Brown 1971), Chapter IV "Title Protection," p. 494). In such a jurisdiction, a purchaser for value who records first has priority over any unrecorded interest even if that purchaser for value has actual knowledge of the prior unrecorded interest. The race to the recorder's office determines who prevails as between the unrecorded prior actual or potential transferee (akin to the tax sale purchaser prior to its receipt of the tax deed) and the subsequent purchaser for value (akin to a grantee in a deed from the prior owner, who receives and records his deed before the tax sale purchaser obtains and records his deed). This analogy is drawn only to show that once the prior owner makes or suffers the transfer to the prior unrecorded transferee, the prior owner "has lost control of the outcome" (in terms of recovering ownership for himself) BUT that loss of control has nothing to do with which of the two transferees ends up with superior status.)

And, tellingly, SIPI admits that any perfection as of the expiration of the redemption period was incomplete when it correctly adds (as it was forced to) the exception clause to its argument: "At this point, the transfer to SIPI was **perfected** because Plaintiffs could not have conveyed an interest in the property to BFP after November 1,2 004, greater than SIPI's **except for the conditions precedent all under SIPI's control**."

Because of the exception clause, SIPI cannot state and does not claim that as of the date the redemption period expired it was impossible for a bona fide purchaser to end up being

_____

analogy contained in Appellants' Brief. It may also be noted that in some states, the term 'bona fide purchaser" is specially defined by statute to mean a good faith purchaser for value *without actual or constructive notice*. This discussion here pertains to common law concepts, not specialized statutory definitions that include lack of notice within the statutory definition.

superior to SIPI.  Under Illinois law, that was indeed a possibility which would, in fact,  come

true if SIPI failed to take the additional steps to perfect–as it admits–by recording its tax deed in

timely manner.   So, only when the tax deed was timely issued and timely recorded could it then

be said that a bona fide purchaser "CANNOT acquire an interest in the property transferred that

is superior to the interest in such property" of the tax purchaser."  Therefore, under Section

548(d)(1), the time of the transfer is the date the tax deed is recorded assuming the recording is in

timely manner


 G) APPELLEES' OBSERVATION THAT ANY EFFORT BY DELINQUENT ILLINOIS

REAL ESTATE TAXPAYERS TO REDEEM FOLLOWING EXPIRATION OF THE

REDEMPTION PERIOD IS IN VAIN IS BOTH IRRELEVANT AND OVERSTATED.

SIPI writes at p. 6 of its Brief: "Second, up until that time, the Plaintiffs themselves

controlled the destiny of the property, but after November 1, 2004, it was SIPI who was in

control" and Midwest writes at p. 6 of its Brief, "any attempts by the prior owner to redeem the

property after the redemption period expires would be in vain."

1) The Appellees' Argument is Irrelevant

Under Section 548(d)(1), the time of transfer is that date upon which the interest

of the property tax purchaser becomes sufficiently perfectly such that a bona fide purchaser

CANNOT end up in superior position to that of the tax purchaser.   As already explained, that

situation–the situation where it is impossible for the bona fide purchaser to end up superior–only

arises under Illinois law where the tax purchaser has timely procured and recorded its tax deed.

Nevertheless, both Appellees insist that a delinquent taxpayer's "loss of control" over the

outcome is determinative.    No statutory analysis is provided by the Appellees for this proposition; rather, the text of Section 548(d)(1) stands in opposition to the legal proposition asserted by the Appellees.    To wit, according to that text, it does not matter how a bona fide purchaser may come into a position superior to that of the tax purchaser.    That is, whether that superiority arises (a)  because of the Debtor/delinquent taxpayer's own ability to control the situation; or instead (b) because the tax purchaser failed to follow through with complying with the statutory conditions required to assure its superiority over the bona fide purchaser (even where the Debtor has lost the ability to control the situation), makes no difference to the test contained in Section 548(d)(1).    That is, until such point in time as the bona fide purchaser "CANNOT" (to use the key statutory term) obtain superiority over the tax purchaser, sufficient perfection, which constitutes the time of transfer under Section 548(d)(1),  has not occurred. And, as noted, that time can only be when the tax deed is timely procured and timely recorded under Illinois state law.

2) The Appellees' Argument is Overstated

The Illinois Appellate Court, First District, Sixth Division has just ruled in In re Application of County Treasurer (Hawkeye v. Lanz), 2007 WL 4571130 (December 28, 2007) that the stated expiration date of the period of redemption for sold real estate taxes is not rigid (contrary to Appellees' position)  and that the Illinois judiciary has equitable powers to extend that period.    The court differentiated the judiciary's equitable powers to extend the redemption period from the lack of power to extend the statutory period in which the defaulting property taxpayer may institute a proceeding seeking to vacate issuance of a tax deed under 35 ILCS 200/22-45.    The Court specially noted that there is a public policy of enhancing "the

marketability of tax deeds" that is not applicable to tax certificates, even where the period of redemption has expired.    Thus, the Appellees' suggestion that any and all efforts of a delinquent property taxpayer to redeem taxes following expiration of the statutory redemption period are in vain and a nullity is simply overstated.  Moreover, this case stands as further disproving of the dictum in <u>Bequette</u> that "upon expiration of the redemption period, the owner loses all interest in the property, including the right to redeem, and can do nothing to prevent issuance of a tax deed to the tax purchaser ..."  (as quoted at p. 6 of Midwest's Brief).

H) APPELLEES WRONGLY ATTRIBUTE TO DEBTORS-APPELLANTS ARGUMENTS NOT MADE BY THEM

1) Specter of "Marketable Title" (Midwest's Brief, pp. 6-8).

Just as it did in the bankruptcy court below (Appendix F-2, p.4), Midwest again (at p. 6 of its brief) falsely charges that Debtors rely on <u>McKinney</u> "for the proposition that the recordation of a tax deed results in the vesting of *merchantable title* to the property in the grantee."  As previously pointed out below to Midwest (Appendix G, p. 7), Debtors made no reference in their Appellants' Brief whatsoever to the concept of merchantable title.    Yet, Midwest now resurrects this "red herring" before this Honorable Court.

2) Specter of Importing Judicial Time To Contest into Two Year Period (SIPI's Brief, pp. 6, 7).

SIPI writes:

What Plaintiffs *seem to be arguing* is that unless all possible time periods for Plaintiffs *to contest* the tax deed in all matter of fashion have expired, the transfer required under 11 USC Section 548(d)(1 ) will not have occurred. If this is so, why are the words "absolute or conditional" used in Section 1 01(54)? In this

regard we point out to the court (a) that if the court adopts this twisted logic, the absolute and unconditional incontestability period for the tax deed under Illinois law would not have occurred until November 15, 2006; and (b) if we add two years to that date, the time to avoid the transfer under Section 548 will now expire on November 15, 2008, a date in the future. Under Section 2-1401 of the Illinois Code of Civil Procedure (735 ILCS 5/2-1401), the Plaintiffs would have two years from the date of the tax deed order to bring a petition to set aside the tax deed under one or more of the grounds in Section 22-45 of the Property Tax Code (35 ILCS 200/22-45), even if the tax deed had been recorded. We do not believe this is the kind of extended time period Congress had in mind when it enacted the Bankruptcy Code.  (italics added)

In actuality and as a review of Appellants' Brief will show, this is NOT what Debtors-Appellants have argued at all!   The Debtors-Appellants' argument is that the two year period of Section 548 is measured back from the Bankruptcy Petition Date and that a  transfer under property law and sufficiently perfected as defined by Section 548(d)(1) of the Code–but not the judicial determination of when a transfer was sufficiently perfected!!–must fall within that two year period in order to be subject to avoidance under Section 548.    Debtors-Appellants have never asserted or argued that the two year period has anything to do with time frames to begin Illinois judicial proceedings to contest a tax deed!   Rather, Debtors-Appellants have consistently maintained that (1) a transfer occurs for purposes of Section 548(a) when a tax deed is timely procured and timely recorded,  and (2) so long as such recording occurs within two years of the bankruptcy petition date, such transfer is subject to avoidance under Section 548(a) assuming that section's other requirements are met.


I) SUBSEQUENT SALE DOES NOT IMPACT THE ISSUE PRESENTED FOR APPEAL

SIPI's Brief at p. 5 writes:  "Finally, the property was sold to whom we assert is a bona fide purchaser for value complicating this matter even more."   In fact, the presence of

Defendant-Appellee Midwest Capital as a subsequent transferee does not affect the issue to be decided here on appeal and the Bankruptcy Code has additional provisions that pertain to the treatment of such a transferee (see, 11 U.S.C. Section 550) once a determination is made that the initial transfer was subject to avoidance under Section 548.  Thus, this reference by SIPI is a diversion from the issue at hand.

CONCLUSION

WHEREFORE, KEITH SMITH and DAWN SMITH pray that this Honorable Court  (a) reverse, as to Counts III and IV of the Adversary Complaint,  the Order of Dismissal in favor of the Defendants, thereby reinstating the Adversary Proceeding which seeks to recover lost equity for the benefit of Appellants' creditors and for retention of their homestead, (b) remand to the United States Bankruptcy Court for further proceedings on said Counts III and IV of the Adversary Complaint, (c) award Plaintiffs-Appellants their costs of appeal and (d) grant Plaintiffs-Appellants all other relief just and proper under the circumstances.

Respectfully submitted,

KEITH SMITH and DAWN SMITH.

By: _____
Arthur G. Jaros, Jr., their attorney

Law Office of Arthur G. Jaros, Jr.
1200 Harger Road, Suite #830
Oak Brook, Illinois 60523
(630) 574-0525 Ext. 103

-15-